UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAYASEKHAR KOVURI,<br>3414 Blacksmith Street, S.E.,<br>Olympia, WA 98501<br><br>      Plaintiff,<br>  v.<br><br>CONDOLEEZZA RICE, Secretary of<br>State of the United States, in her<br>official capacity as well as her<br>successors and assigns,<br>U.S. Department of State,<br>2201 C Street, N.W.,<br>Washington, D.C. 20501-0001,<br><br>      and<br><br>MICHAEL B. MUKASEY, Attorney<br>General of the United States, in his<br>official capacity as well as his<br>successors and assigns,<br>U.S. Department of Justice,<br>950 Pennsylvania Avenue, N.W.,<br>Washington, D.C. 20530-0001,<br><br>      and<br><br>ROBERT S. MUELLER, III, Director,<br>Federal Bureau of Investigation,<br>In his official capacity, as well as his<br>successors and assigns,<br>J. Edgar Hoover Building,<br>935 Pennsylvania Avenue N.W.,<br>Washington, DC 20535-0001<br><br>      and<br><br>EMILIO T. GONZALEZ, Director,<br>U.S. Department of Homeland<br>Security, U.S. Citizenship and<br>Immigration Services, in his official<br>capacity, as well as his successors<br>and assigns,<br>20 Massachusetts Avenue, N.W.,<br>Washington, DC 20529<br><br>      and | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>**COMPLAINT FOR PETITION FOR<br>WRIT OF MANDAMUS AND FOR<br>DECLARATIVE AND INJUNCTIVE<br>RELIEF**<br><br>**CIVIL ACTION NO.**<br><br>**AGENCY CASE NO. A096-242-234**<br><br>**REQUEST FOR ORAL ARGUMENT** |

PAUL E. NOVAK, JR., Director,
Vermont Service Center,
U.S. Department of Homeland
Security, U.S. Citizenship and
Immigration Services, in his official
capacity as well as his successors
and assigns,
75 Lower Welden Street,
St. Albans, VT 05479-0001

     and

EVELYN C. UPCHURCH, Director,
Texas Service Center, U.S.
Department of Homeland Security,
U.S. Citizenship and Immigration
Services, in her official capacity as
well as her successors and assigns,
4141 North St. Augustine Road,
Dallas, TX 75227,

     Defendants.

## COMPLAINT FOR PETITION FOR WRIT OF MANDAMUS AND FOR DECLARATIVE AND INJUNCTIVE RELIEF

**To the Honorable Judges of Said Court:**

COMES NOW, Plaintiff, Jayasekhar Kovuri, through his undersigned counsel, and alleges as follows:

## I. INTRODUCTION

1.    This is a civil action seeking mandamus, declaratory and injunctive relief based upon the failure of the Federal Bureau of Investigation ("FBI") to complete Plaintiff's National Name Check Program clearance, which has unreasonably delayed any adjudication of Plaintiff's application for adjustment of status, which was filed by Plaintiff, pursuant to §245 of the Immigration and Nationality Act, 8 U.S.C. §1255 ("INA"), on **December 16, 2002**. *See*, Affidavit of Jayasekhar Kovuri, dated December 14, 2007, a copy of which is attached and incorporated hereto as "Exhibit A."

2.      Plaintiff seeks to compel Defendant Attorney General Mukasey, and those acting under his direction, to complete Plaintiff's FBI National Name Check Program clearance (generating a "FBIQUERY System" response), which is required before the U.S. Citizenship and Immigration Service ("USCIS") can adjudicate his application for adjustment of status pursuant to §245 of the INA, the Mandamus and Venue Act (28 U.S.C. §1361) ("Mandamus Act"), 8 U.S.C. §1101 (INA), 8 U.S.C. §1571 ("The Immigration Services and Infrastructure Improvements Act of 2000"), the Declaratory Judgment Act (28 U.S.C. §2201) and the Administrative Procedures Act (5 U.S.C. §551 and §701, et seq.) ("APA").

3.      Attorneys fees and costs are entitled to Plaintiff pursuant to the Equal Access to Justice Act ("EAJA"), 5 U.S.C. § 504 and 28 U.S.C. § 2412(d), et seq.[1]

## II. PARTIES

4.      Plaintiff, Jayasekhar Kovuri, is an adult individual who is a national of India and resides lawfully in the United States. He resides at 3414 Blacksmith Street SE, Olympia, WA 98501. Exhibit A.

5.      Dr. Condoleezza Rice is the U.S. Secretary of State and this action is brought against her in her official capacity only, as well as her successors and assigns. She is generally charged with implementing U.S. foreign policy and is further authorized to delegate such powers and authority to subordinate employees of the Bureau of Consular Affairs ("BCA"), which is an agency within the Department of State. The BCA is responsible for the issuance of visas to foreign nationals for entry into the U.S. and is also responsible for the tracking and allocation of visa numbers to foreign nationals. The BCA releases a monthly Visa Bulletin that indicates when a foreign national may apply for a class of immigrant visas based on

---

[1] See, Elkhatib v. Bulger, 2006 U.S. Dist. LEXIS 60485 (S.D. Fla. 2006) (fees granted after a plaintiff succeeded in his mandamus action seeking to compel the USCIS to adjudicate his adjustment application) and Aboushaban v. Mueller, 2007 U.S. Dist. LEXIS 15402 (N.D. Cal. 2006) (fees granted after the Court granted a plaintiff's writ of mandamus and ordered the USCIS to adjudicate his adjustment application).

his or her visa priority dates. Only visa applicants with a priority date earlier than the cut-off date listed for each category in the Visa Bulletin may be assigned a visa number and granted an immigrant visa. *See*, Visa Bulletin for January 2008 and Visa Bulletin for December 2007, copies of which are attached and incorporated hereto as "Exhibit B" and "Exhibit C."

6.      Michael B. Mukasey is the Attorney General of the United States and this action is brought against him in his official capacity only, as well as his successors and assigns. He is generally charged with enforcement of the Immigration and Nationality Act, and is further authorized to delegate such powers and authority to subordinate employees of the FBI, which is an agency within the U.S. Department of Justice. More specifically, Mr. Mukasey is responsible for overseeing the FBI's National Name Check Program ("NNCP"), which is mandated by Executive Order No. 10450. Presently, every intending immigrant must complete an FBI NNCP screening before his or her adjustment of status application can be approved. *See*, 22 C.F.R. §42.67(c)(2).

7.      Robert S. Mueller, III, is the Director of the FBI and is named herein only his official capacity, as well as his successors and assigns, and his duties include ensuring timely completion of all requests made by the USCIS for security clearances, including NNCP screenings. The FBI is headquartered at the J. Edgar Hoover Building, 935 Pennsylvania Avenue, NW, Washington, DC 20535-0001.

8.      Dr. Emilio Gonzalez is the Director of the USCIS, who is named herein only his official capacity, as well as his successors and assigns. He is generally charged with the implementation of the Immigration and Nationality Act, and is further authorized to delegate such powers and authority to subordinate employees of the USCIS. USCIS is specifically assigned the adjudication of immigrant visa petitions as well as applications for permanent residence status under §245 of the INA. USCIS is headquartered at 20 Massachusetts Avenue, N.W.,

Washington, DC 20529.

9.     Defendants Rice, Mukasey, Gonzalez and Mueller are federal officers and agency heads who perform a significant amount of their official duties in the District of Columbia.

10.     Paul E. Novak, Jr. is the District Director of the Vermont Service Center ("VSC") of the USCIS and is named herein only in his official capacity, as well as his successors and assigns. Plaintiff properly filed his application for adjustment of status with the VSC and that office retained his application for several years before transferring his case to the Texas Service Center ("TSC"). USCIS, through its headquarters in Washington, D.C., any of its four (4) service centers, National Benefits Center, numerous Field Offices, numerous Sub-Offices and Application Support Centers, has a mandatory duty to act on Plaintiff's application for adjustment of status within a reasonable period of time.

11.     Evelyn C. Upchurch is the District Director of the TSC and is named herein only in her official capacity, as well as her successors and assigns. While Plaintiff properly filed his application for adjustment of status with the VSC, the USCIS unilaterally transferred Plaintiff's application to the TSC for processing. USCIS, through its headquarters in Washington, D.C., any of its four (4) service centers, National Benefits Center, numerous Field Offices, numerous Sub-Offices and Application Support Centers, has a mandatory duty to act on Plaintiff's application for adjustment of status within a reasonable period of time.

III. JURISDICTION

12.     This Honorable Court has subject matter jurisdiction over this Complaint under the Constitution and laws of the United States, including the Fifth Amendment to the U.S. Constitution, provisions of Title 8 U.S.C. §1101 (INA), 8 U.S.C. §1571 ("The Immigration Services and Infrastructure Improvements Act of 2000"), 28 U.S.C. §1331 (federal question jurisdiction), 28 U.S.C. §2201 (Declaratory

Judgment Act), 28 U.S.C. §1361 (Mandamus Act), 28 U.S.C. §1651 (All Writs Act)

as well as under 5 U.S.C. §555 and 701, et seq. (APA). Relief is requested pursuant

to the U.S. Constitution and these statutes.

13.    When Congress enacted The Immigration Services and Infrastructure

Improvements Act of 2000, it set the period of one-hundred-and-eighty days (180) as

the normative expectation for the government to complete the processing of an

immigrant benefit application. This 180 day period, which begins upon the initial

filing of the application, is considered a **reasonable processing time**. See, 8

U.S.C. §1571 and <u>Konchitsky v. Chertoff</u>, 2007 U.S. Dist. LEXIS 53998 at 11-15

(N.D. Cal. July 13, 2007)

14.    **Plaintiff's adjustment application has therefore been pending

four-and-one-half (4.5) years longer than is considered reasonable** under 8

U.S.C. §1571.

15.    This action is filed in response to unreasonable agency delay and

failure to complete Plaintiff's FBI NNCP screening and issue a "FBIQUERY System"

response to the USCIS, which has unreasonably prevented the adjudication of

Plaintiff's adjustment of status application, in violation of the APA. Plaintiff merely

seeks to compel FBI action on an unreasonably delayed NNCP screening. **Plaintiff

does not seek review of a discretionary decision rendered or act by non-FBI

Defendants, including any action on the part of Defendant USCIS.**

16.    There are no administrative remedies available to Plaintiff to redress

his grievances described herein. As described more fully below, Plaintiff has filed

two (2) Freedom of Information-Privacy Act ("FOIPA") requests with the FBI,

contacted the USCIS' Vermont Service Center, his local USCIS Field Office, the

USCIS Ombudsman ("CISO"), U.S. Congressman Brian Baird and U.S. Senator

Patty Murray.

17.     Plaintiff's instant action challenges only the reasonableness of Defendants' delay or inaction in the completion of his NNCP screening and transmission of a "FBIQUERY System" response to the USCIS, not the grant or denial of his adjustment application, therefore the jurisdictional limitations of 8 U.S.C. §1252 do not apply.

18.     This Court, in an opinion by U.S. District Judge Emmet G. Sullivan, has specifically held that it has subject matter jurisdiction to hear a similar cause of action under the APA filed by an alien whose adjustment application had been pending since July 23, 2003.  See, Liu v. Novak, 509 F.Supp. 2d 1, 13 (D.D.C. Aug. 30, 2007)

19.     As noted in Judge Sullivan's opinion, there is significant district court authority holding that subject matter jurisdiction is appropriate for judicial review of an **agency's failure to take action** or to review the pace of adjustment application processing.  Id., at 11-12.  See also, Tang v. Chertoff, 2007 U.S. Dist. LEXIS 64022 at *14-19 (E.D. Ky. Aug, 29, 2007) (**granting a preliminary injunction and writ of mandamus** after finding that USCIS had a non-discretionary duty to process plaintiff's I-485 applications); Xu v. Chertoff, 2007 U.S. Dist. LEXIS 55215 at *2 (E.D. Mich. July 31, 2007) (duty to process I-485 applications within a reasonable time is a **non-discretionary duty** imposed by the APA and reviewable through the mandamus statute); Yan Yang v. Gonzales, 2007 U.S. Dist. LEXIS 42143 at *6 (S.D. Oh. June 11, 2007) (a complaint invoking the court's **mandamus jurisdiction** to compel resolution of I-485 application was appropriate); Song v. Klapakas, 2007 U.S. Dist. LEXIS 27203 at *10 (E.D. Pa. April 12, 2007) (**mandamus jurisdiction** is appropriate because defendants owe plaintiffs a **non-discretionary duty** to act on their adjustment of status applications in a reasonable time); Saleem v. Keisler, 2007 U.S. Dist. LEXIS 80044 at *37 (W.D. Wisc. Oct. 26, 2007) (USCIS ordered to

adjudicate adjustment application within 60 days); <u>Jin v. Heinauer</u>, 2007 U.S. Dist.

LEXIS 89214 at *12-13 (S.D. Ohio Dec. 4, 2007) (USCIS ordered to adjudicate

adjustment application within 90 days); <u>Gershenzon v. Gonzales</u>, 2007 U.S. Dist.

LEXIS 68600 (W.D. Pa. Sept. 17, 2007) (motion to dismiss denied where USCIS had

not adjudicated an adjustment application for more than three years due to an

incomplete FBI NNCP screening); <u>Liu v. Chertoff</u>, 2007 U.S. Dist. LEXIS 50173 (E.D.

Cal. July 11, 2007) (two-and-a-half year delay); <u>Okunev v. Chertoff</u>, 2007 U.S. Dist.

LEXIS 53161 (N.D. Cal. July 11, 2007) (more than a three year delay); <u>Quan v.</u>

<u>Chertoff</u>, 2007 U.S. Dist. LEXIS 44081 (N.D. Cal. June 7, 2007) (unreasonable

delay); <u>Singh v. Still</u>, 470 F.Supp. 2d 1064, 1072 (N.D. Cal. 2007) (nearly a four

year delay); <u>Aboushaban v. Mueller</u>, 2006 U.S. Dist. LEXIS 81076 (N.D. Cal. 2006)

(an approximate eight year delay); <u>Salehian v. Novak</u>, 2006 U.S. Dist. LEXIS 77028

(D. Conn. 2006) (two year delay); <u>Duan v. Zamberry</u>, 2007 U.S. Dist. LEXIS 12697

(W.D. Pa. Feb. 23, 2007) (more than a one year delay); and <u>Jones v. Gonzales</u>,

2007 U.S. Dist. LEXIS 45012 (S.D. Fla. June 21, 2007) (delays of two and three

years).

**IV. VENUE**

20.    Venue is properly with this Court, pursuant to 28 U.S.C. § 1391(e)(1)

because:

a.    Defendant Condoleezza Rice is the Secretary of the

Department of State, which is headquartered in the District of Columbia. Defendant

Rice performs a significant amount of her official duties in the District of Columbia[2]

and resides, for purposes of venue, within the District of Columbia;

---

[2] It is well-established precedent in this Court that, "When an officer or agency head performs a 'significant amount' of his or her official duties in the District of Columbia, the District of Columbia is a proper place for venue." <u>Jyachosky v. Winter</u>, 2006 U.S. Dist. LEXIS 44399 at 12, hn. 6 (D.D.C. June 29, 2006), citing to <u>Bartman v. Cheney</u>, 827 F.Supp. 1, 1 (D.D.C. 1993) (holding that the Secretary of Defense resides in Washington, D.C. for purposes of 28 U.S.C. § 1391(e))

b.     Defendant Attorney General Michael B. Mukasey is an officer of the Department of Justice and is responsible for the operation of the FBI, which is headquartered in the District of Columbia. Defendant Mukasey performs a significant amount of his official duties in the District of Columbia and resides, for purposes of venue, within the District of Columbia;

c.     Defendant Emilio Gonzalez is an officer of the Department of Homeland Security and is the Director of the USCIS, which is headquartered in the District of Columbia. Defendant Gonzalez performs a significant amount of his official duties in the District of Columbia and resides, for purposes of venue, within the District of Columbia;

d.     Defendant Robert S. Mueller, III is an officer of the Department of Justice and is Director of the FBI, which is headquartered in the District of Columbia. Defendant Mueller performs a significant amount of his official duties in the District of Columbia and resides, for purposes of venue, within the District of Columbia;

e.     Defendants Novak and Upchurch are officers of the Department of Homeland Security who retain jurisdiction over Plaintiff's adjustment application, subject to the discretion of Defendant Gonzalez, who resides in the District of Columbia. This is demonstrated by the unexplained transfer of Plaintiff's adjustment application from the VSC to the TSC for processing;

f.     A substantial part of the events or omissions giving rise to Plaintiff's Complaint occurred within the offices of the FBI, DHS and USCIS, which are all headquartered in the District of Columbia; and

g.     Judicial economy and the interests of justice warrant that Plaintiff's action be brought and decided in the District of Columbia, because the above-listed Defendant U.S. officials perform a significant amount of their official

duties, and their agencies are all located, within the jurisdiction of this Honorable Court, or are subject to the discretion of their Agency Director who is similarly located within the District of Columbia.

21.     Due to the decentralized nature of USCIS case processing, which allows for the transfer of adjustment applications to any USCIS facility located anywhere in the United States of America, at any time, venue is only appropriate in the District Court for the District of Columbia.

## V. STATEMENT OF FACTS
### A. Eligibility for Adjustment of Status

22.     On December 16, 2002, Plaintiff filed with the VSC an Application for Adjustment of Status pursuant to § 245 of the INA, 8 U.S.C. § 1255, to obtain lawful permanent resident status.  Exhibit A

23.     Plaintiff's adjustment application was properly filed with the VSC but was subsequently, and without warning, transferred to the TSC.  It is the duty of the USCIS, regardless of how often and to where it chooses to transfer Plaintiff's application within its myriad offices, to timely adjudicate his application.

24.     Plaintiff has complied with all requests made by the USCIS to complete all of the necessary biometrics appointments required by the USCIS. He has provided all of the information requested by the agency and has complied with all of the appointment notices.

### B. USCIS and FBI Security Checks

25.     Once an adjustment application is filed, the FBI must conduct mandatory criminal and national security background checks before an adjudication of the application is possible.  These security checks include the FBI NNCP check. *See*, Declaration of Bradley J. Brouillette, Supervisory Center Adjudications Officer at the VSC, dated April 23, 2007 at page 2, a copy of which is attached and incorporated hereto as "Exhibit D."

26.    In a majority of FBI NNCP name checks, no "matches" or indications of derogatory information are found. See, Exhibit D, page 2.

27.    The FBI processes USCIS-requested NNCP checks chronologically, based on the date the request was forwarded. Initial responses to the NNCP check are generally available within two (2) weeks. In eighty percent (80%) of applications, no "match" or derogatory information is found. Of the remaining twenty percent (20%), most NNCP checks are resolved within six (6) months. See Exhibit D, 6 and USCIS Fact Sheet, dated April 25, 2006, which was referenced in and incorporated into Mr. Brouillette's Declaration, at pages 2-3.

28.    Less that **one percent (1%) of cases** subject to an FBI NNCP check **remain pending longer than six (6) months**. Exhibit D, CIS Fact Sheet, page 2.

29.    The FBI has stated, in a declaration previously submitted to this Court, that it has historically resolved approximately sixty-eight percent (68%) of NNCP name checks with a "no record" result within **seventy-two (72) hours**. Of the remaining cases, a secondary check historically has revealed a "no record" result within an additional **thirty to sixty (30-60) days** for twenty-two percent of all cases. Of the remaining ten percent of cases, less than **one percent (1%)** of USCIS cases are identified with a file containing *possible* derogatory information. See, Declaration of Michael A. Cannon, dated April 13, 2007 at pages 5-6, a copy of which is attached and incorporated hereto as "Exhibit E."

## C. Exhaustion of Administrative Remedies

30.    Plaintiff, by himself and through legal counsel, has made repeated inquiries regarding the status of his Application for Adjustment of Status. Plaintiff was advised in writing on several occasions that that the adjudication of his adjustment application has been delayed because of the absence of the required security checks and remained delayed for lack of the security checks.

31.    Plaintiff contacted the USCIS National Customer Service line at least nine (9) times between November 2004 and October 2007, but was informed that his adjustment application was being delayed due to security checks.

32.    Plaintiff filed two Freedom of Information-Privacy Acts ("FOIPA") requests with the FBI, but received no information relevant to his requests. *See,* Letters from FBI Section Chief David M. Hardy, dated September 22, 2006, copies of which are attached and incorporated hereto as "Exhibit F."

33.    Plaintiff contacted his local USCIS field officers using InfoPass appointments in January 2006, February 2007 and August 2007, but he was informed by these field officers that his adjustment application had been delayed since 2003 pending the completion of a FBI name check clearance.

34.    Plaintiff contacted the USCIS, in writing, at least five (5) times between November 2004 and June 2005, but received duplicative written responses noting that his adjustment application was being delayed due to incomplete security checks. *See,* Letters from Defendant Paul E. Novak, Jr. and Sandra T. Bushey, copies of which are attached and incorporated hereto as "Exhibit G."

35.    Plaintiff contacted the USCIS, in writing, at least two (2) times 2006, but received duplicative written responses noting that his adjustment application was being delayed due to an incomplete background investigation. *See,* USCIS Letters to Plaintiff, dated February 2, 2006 and August 30, 2006, copies of which are attached and incorporated hereto as "Exhibit H."

36.    Plaintiff contacted the USCIS, in writing, at least two (2) times in 2007, but received duplicative written responses noting that his adjustment application was being delayed due to incomplete security checks. *See,* Letter from Defendant Paul E. Novak, Jr., dated March 2, 2007, a copy of which is attached and incorporated hereto as "Exhibit I."

37.    Plaintiff contacted the CIS Ombudsman in writing on May 21, 2007 and received a written response stating that on February 24, 2007, his adjustment application "was relocated from the Vermont Service Center, to the Texas Service Center for processing." This letter also noted that his adjustment application was being delayed due to incomplete security checks. *See,* Letters from USCIS Ombudsman, dated June 1 and 14, 2007, copies of which are attached and incorporated hereto as "Exhibit J."

38.    Plaintiff contacted U.S. Congressman Brian Baird and requested assistance with resolving the delay in the adjudication of his adjustment application. Congressman Baird acknowledged Plaintiff's request for assistance in a letter. *See,* Letter from U.S. Congressman Brian Baird, dated September 26, 2005, a copy of which is attached and incorporated hereto as "Exhibit K."

39.    Plaintiff also contacted U.S. Senator Patty Murray's Vancouver District Office concerning the delay in the adjudication of his adjustment application. On May 2, 2005, Senator Murray sent a written response to the Plaintiff stating that her office contacted the USCIS and made inquiries into his case. *See,* Letter from U.S. Senator Patty Murray, dated May 2, 2005, a copy of which is attached and incorporated hereto as "Exhibit L."

**D. Plaintiff's Mandamus Action**

40.    In order to obtain relief under the Mandamus Act, plaintiff must establish that (1) his claim is "clear and certain;" (2) the duty owed is "ministerial and so plainly prescribed as to be free from doubt;" and (3) that no other adequate remedy is available. *See,* Patel v. Reno, 134 F.3d 929, 931 (9th Cir. 1997)

41.    Plaintiff has demonstrated through the FBI's own Declaration that Defendant FBI has a non-discretionary duty to complete all USCIS-requested NNCP name checks within a reasonable time.  There is no legal authority for the argument that the FBI may choose not to complete a USCIS-requested NNCP name check. Exhibits D and E

42.    Plaintiff has demonstrated that his claim for relief from the FBI's inaction is clear and certain in that there is no legal authority for the FBI to justify its inaction or to refuse to complete his USCIS-requested NNCP name check.

43.    The FBI's duty to complete Plaintiff's NNCP name check is purely ministerial in nature and so plainly prescribed by Executive Order that the Agency's duty is free from doubt.

44.    Plaintiff's exhaustion of remedies, as described above, coupled with the impending retrogression of his EB-2 India immigrant visa category shows that there is no other adequate remedy available to him.

## VI. INJURIES TO PLAINTIFF

45.    Plaintiff is adversely affected by the Defendant FBI's inaction described above in that his ability to travel abroad and work is restricted during the pendancy of his adjustment application period.  Until his FBI NNCP name check is completed, Plaintiff must annually apply and pay for special travel permission and work authorizations.

46.    Plaintiff has lost a significant amount of work time while pursuing his adjustment application, including but not limited to, making inquiries to the USCIS and FBI, meeting with his attorneys, applying for annual work authorization renewals and reporting for fingerprinting.

47.    Due to Defendant FBI's inaction described above, Plaintiff's future naturalization (to become a U.S. Citizen) has been delayed.

## VII.  GROUNDS FOR RELIEF

48.    Defendant FBI's inaction and refusal to complete Plaintiff's NNCP screen and to transmit a "FBIQUERY System" response is both arbitrary and capricious, as the FBI has a **mandatory, non-discretionary** duty, as required by law, to complete this process.  5 U.S.C. §701, 702 and 706, et seq. and 5 U.S.C. §555.

49.    Defendant FBI's inaction is a violation of the APA in that it has unlawfully withheld or unreasonably delayed action on Plaintiff's FBI NNCP name check.

50.    The APA provides a remedy to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(I).

51.    Mandamus is a remedy available for extreme agency delay where the agency has not performed a mandatory action. 28 U.S.C. § 1361.

52.    Defendant FBI's inaction is unconstitutional, violates its own procedures, is arbitrary and capricious and Plaintiff seeks a declaration to that effect under the Declaratory Judgment Act at 28 U.S.C. §2201.

53.    If Plaintiff prevails under any of his claims stated herein, he is entitled to recover his attorneys' fees and costs under the EAJA, as amended, 5 U.S.C. §504 and 28 U.S.C. §2412.

## VIII.  CLAIMS FOR RELIEF

54.    Defendant FBI has unreasonably delayed and failed to perform a mandatory action in completing Plaintiff's NNCP screen and transmitting a "FBIQUERY System" response to the USCIS, thereby preventing the adjudication of Plaintiff's adjustment application that was filed over five (5) years ago and depriving Plaintiff of his right to lawful permanent residence status and benefits conferred there from including the accrual of time to apply for U.S. citizenship.

55.    Defendant FBI owes Plaintiff the duty to act and complete his NNCP screen and transmit a "FBIQUERY System" response and has unreasonably failed to perform these duties.

56.    Plaintiff has exhausted any administrative remedies that may exist. No other remedy exists for Plaintiff to resolve Defendant FBI's inaction.

WHEREFORE, Plaintiff prays that this Honorable Court:

(1)    Compel the Defendant Attorney General Mukasey and those acting under him to perform their duty to complete Plaintiff's NNCP screen and transmit a "FBIQUERY System" response to the USCIS;

(2)    Grant such other and further declaratory, injunctive or equitable relief as this Court deems proper under the circumstances; and

(3)    Grant attorney's fees, expenses and costs of court pursuant to the EAJA.


Aron A. Finkelstein, Esquire
DC Bar No. MD25590
Murthy Law Firm
10451 Mill Run Circle
Suite 100
Owings Mills, MD 21117
(410) 356-5440

Attorney for Plaintiff

# Exhibit A

**State of Washington**                    )
                                           )        SSN: 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
**County of Thurston**                     )

## AFFIDAVIT

I, Jayasekhar Kovuri, after being duly sworn, do hereby state and affirm that:

1.  I am a citizen and national of India, aged 35 years, and am competent to testify to the facts herein.
2.  I reside at 3414 Blacksmith Street, S.E., Olympia, Washington 98501.
3.  My date of birth is February 4, 1972 and I was born at Peraiahgari Palle, India.
4.  I filed my Form I-485 Application for Adjustment of Status pursuant to §245 of the Immigration and Nationality Act ("INA"), 8 U.S.C. §1255, on December 16, 2002.
5.  My Form I-485 Application for Adjustment has been pending since December 16, 2002 and I have completed all steps and complied with all U.S. Citizenship and Immigration Service ("USCIS") requests regarding my case.
6.  I have been informed by multiple government sources that my I-485 Application is being delayed because of an unreasonable agency delay in that the Federal Bureau of Investigations ("FBI") has not completed my National Name Check Program clearance and generated a "FBIQUERY System" response, which is required before the USCIS may approve my Adjustment of Status.
7.  I have made numerous requests regarding the status of my delayed I-485 Application including:
    a.  Two Freedom of Information-Privacy Act ("FOIPA") requests with the FBI;
    b.  Contacting the USCIS' Vermont Service Center;
    c.  Contacting my local USCIS Field Office in Seattle, Washington;
    d.  Making an official inquiry with the USCIS Ombudsman;
    e.  Making an official inquiry through U.S. Congressman Brian Baird's office; and
    f.  Making an official inquiry through U.S. Senator Patty Murray's office.
8.  Despite these repeated attempts, and a delay of nearly five (5) years, my I-485 Application has not been adjudicated due to the FBI NNCP processing delay.
9.  Pursuant to the December 2007 Visa Bulletin, issued by the U.S. Department of State, the cut-off date for processing for EB-2 immigrant visas for Indian nationals was January 1, 2002. My priority date for my EB-2 visa is December 7, 2000, which means that my case could be approved at this time, if my FBI NNCP check was completed.

10. Pursuant to the recently released January 2008 Visa Bulletin, the new processing cut-off for EB-2 immigrant visas for Indian nationals is January 1, 2000. Based on this Visa Bulletin and my priority date, there will not be a immigrant visa number available to me in after January 1, 2008 and my I-485 Application will not be approved and will be further delayed for an unknown period of time.

11. The FBI's unreasonable delay in completing my NNCP check is preventing me from having my I-485 Application adjudicated and is preventing me from becoming a lawful permanent resident and eventually, a U.S. citizen.

I AFFIRM under penalty of perjury and upon personal knowledge that the above statements and facts are true and accurate to the best of my knowledge, information and belief.

Signature: _K. Jaysekar_
Jayasekhar Kovuri

Date: _12|14|2007_

STATE OF _Washington_, CITY/COUNTY OF _Thurston_,TO WIT :
_Jayasekhar Kovuri._
I HEREBY CERTIFY THAT on this 4th day of _December_, 2007, before me, a Notary Public of the aforesaid State and City/County, personally appeared _Jayasekhar Kovuri_ known to me (or satisfactorily proven) to be the person whose name is subscribed to the foregoing instrument, who acknowledged that s/he has executed it for the purposes therein set forth.

_____
NOTARY PUBLIC

# Exhibit B

# Visa Bulletin

*Number 113*
*Volume VIII*
*Washington, D.C.*

## VISA BULLETIN FOR DECEMBER 2007

### A. STATUTORY NUMBERS

1. This bulletin summarizes the availability of immigrant numbers during **December**. Consular officers are required to report to the Department of State documentarily qualified applicants for numerically limited visas; the Bureau of Citizenship and Immigration Services in the Department of Homeland Security reports applicants for adjustment of status. Allocations were made, to the extent possible under the numerical limitations, for the demand received by November **13th** in the chronological order of the reported priority dates. If the demand could not be satisfied within the statutory or regulatory limits, the category or foreign state in which demand was excessive was deemed oversubscribed. The cut-off date for an oversubscribed category is the priority date of the first applicant who could not be reached within the numerical limits. Only applicants who have a priority date **earlier than** the cut-off date may be allotted a number. Immediately that it becomes necessary during the monthly allocation process to retrogress a cut-off date, supplemental requests for numbers will be honored only if the priority date falls within the new cut-off date.

2. Section 201 of the Immigration and Nationality Act (INA) sets an annual minimum family-sponsored preference limit of 226,000. The worldwide level for annual employment-based preference immigrants is at least 140,000. Section 202 prescribes that the per-country limit for preference immigrants is set at 7% of the total annual family-sponsored and employment-based preference limits, i.e., 25,620. The dependent area limit is set at 2%, or 7,320.

3. Section 203 of the INA prescribes preference classes for allotment of immigrant visas as follows:

### FAMILY-SPONSORED PREFERENCES

**First:** Unmarried Sons and Daughters of Citizens: 23,400 plus any numbers not required for fourth preference.

**Second:** Spouses and Children, and Unmarried Sons and Daughters of Permanent Residents: 114,200, plus the number (if any) by which the worldwide family preference level exceeds 226,000, and any unused first preference numbers:

A. Spouses and Children: 77% of the overall second preference limitation, of which 75% are exempt from the per-country limit;

B. Unmarried Sons and Daughters (21 years of age or older): 23% of the overall second preference limitation.

**Third:** Married Sons and Daughters of Citizens: 23,400, plus any numbers not required by first and second preferences.

**Fourth:** Brothers and Sisters of Adult Citizens: 65,000, plus any numbers not required by first three preferences.

### EMPLOYMENT-BASED PREFERENCES

**First:** Priority Workers: 28.6% of the worldwide employment-based preference level, plus any numbers not required for fourth and fifth preferences.

**Second:** Members of the Professions Holding Advanced Degrees or Persons of Exceptional Ability: 28.6% of the worldwide employment-based preference level, plus any numbers not required by first

preference.

**Third:** Skilled Workers, Professionals, and Other Workers: 28.6% of the worldwide level, plus any numbers not required by first and second preferences, not more than 10,000 of which to "Other Workers".

**Fourth:** Certain Special Immigrants: 7.1% of the worldwide level.

**Fifth:** Employment Creation: 7.1% of the worldwide level, not less than 3,000 of which reserved for investors in a targeted rural or high-unemployment area, and 3,000 set aside for investors in regional centers by Sec. 610 of P.L. 102-395.

4. INA Section 203(e) provides that family-sponsored and employment-based preference visas be issued to eligible immigrants in the order in which a petition in behalf of each has been filed. Section 203(d) provides that spouses and children of preference immigrants are entitled to the same status, and the same order of consideration, if accompanying or following to join the principal. The visa prorating provisions of Section 202(e) apply to allocations for a foreign state or dependent area when visa demand exceeds the per-country limit. These provisions apply at present to the following oversubscribed chargeability areas: CHINA-mainland born, INDIA, MEXICO, and PHILIPPINES.

5. On the chart below, the listing of a date for any class indicates that the class is oversubscribed (see paragraph 1); "C" means current, i.e., numbers are available for all qualified applicants; and "U" means unavailable, i.e., no numbers are available. (NOTE: Numbers are available only for applicants whose priority date is **earlier** than the cut-off date listed below.)

| Fam-ily | All Charge-ability Areas Except Those Listed | CHINA-mainland born | INDIA | MEXICO | PHILIPP-INES |
|---|---|---|---|---|---|
| 1st | 08JAN02 | 08JAN02 | 08JAN02 | 01JUL92 | 22SEP92 |
| 2A | 15JAN03 | 15JAN03 | 15JAN03 | 01MAY02 | 15JAN03 |
| 2B | 15OCT98 | 15OCT98 | 15OCT98 | 15MAR92 | 01JAN97 |
| 3rd | 08APR00 | 08APR00 | 08APR00 | 08JUL92 | 01APR91 |
| 4th | 22JUN97 | 08OCT96 | 15AUG96 | 22SEP94 | 08NOV85 |

**\*NOTE**: For December, 2A numbers **EXEMPT from per-country limit** are available to applicants from all countries with priority dates **earlier** than 01MAY02. 2A numbers **SUBJECT to per-country limit** are available to applicants chargeable to all countries **EXCEPT MEXICO** with priority dates beginning 01MAY02 and earlier than 15JAN03. (All 2A numbers provided for MEXICO are exempt from the per-country limit; there are no 2A numbers for MEXICO subject to per-country limit.)

| | All Charge-ability Areas Except Those Listed | CHINA-mainland born | INDIA | MEXICO | PHILIP-PINES |
|---|---|---|---|---|---|
| Employ-ment -Based | | | | | |
| 1st | C | C | C | C | C |
| 2nd | C | 01JAN03 | 01JAN02 | C | C |
| 3rd | 01SEP02 | 15OCT01 | 01MAY01 | 22APR01 | 01SEP02 |
| | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| Other Workers | 01OCT01 | 01OCT01 | 01OCT01 | 01OCT01 | 01OCT01 |
| 4th | C | C | C | C | C |
| Certain Religious Workers | C | C | C | C | C |
| 5th | C | C | C | C | C |
| Targeted Employment Areas/ Regional Centers | C | C | C | C | C |

The Department of State has available a recorded message with visa availability information which can be heard at: (area code 202) 663-1541. This recording will be updated in the middle of each month with information on cut-off dates for the following month.

Employment Third Preference Other Workers Category: Section 203(e) of the NACARA, as amended by Section 1(e) of Pub. L. 105-139, provides that once the Employment Third Preference Other Worker (EW) cut-off date has reached the priority date of the latest EW petition approved prior to November 19, 1997, the 10,000 EW numbers available for a fiscal year are to be reduced by up to 5,000 annually beginning in the following fiscal year. This reduction is to be made for as long as necessary to offset adjustments under the NACARA program. Since the EW cut-off date reached November 19, 1997 during Fiscal Year 2001, the reduction in the EW annual limit to 5,000 began in Fiscal Year 2002.

## B. DIVERSITY IMMIGRANT (DV) CATEGORY

Section 203(c) of the Immigration and Nationality Act provides a maximum of up to 55,000 immigrant visas each fiscal year to permit immigration opportunities for persons from countries other than the principal sources of current immigration to the United States. The Nicaraguan and Central American Relief Act (NACARA) passed by Congress in November 1997 stipulates that beginning with DV-99, and for as long as necessary, up to 5,000 of the 55,000 annually-allocated diversity visas will be made available for use under the NACARA program. **This reduction has resulted in the DV-2008 annual limit being reduced to 50,000.** DV visas are divided among six geographic regions. No one country can receive more than seven percent of the available diversity visas in any one year.

For **December**, immigrant numbers in the DV category are available to qualified DV-2008 applicants chargeable to all regions/eligible countries as follows. When an allocation cut-off number is shown, visas are available only for applicants with DV regional lottery rank numbers **BELOW** the specified allocation cut-off number:

| Region | All DV Chargeability Areas Except Those Listed Separately | |
|---|---|---|
| AFRICA | 11,100 | Except: Egypt: 8,400 Ethiopia: 6,950 Nigeria: 6,900 |
| ASIA | 4,750 | |
| EUROPE | 11,100 | |
| NORTH | | |

| | | |
|---|---|---|
| AMERICA (BAHAMAS) | 3 | |
| OCEANIA | 675 | |
| SOUTH AMERICA, and the CARIBBEAN | 900 | |

Entitlement to immigrant status in the DV category lasts only through the end of the fiscal (visa) year for which the applicant is selected in the lottery. The year of entitlement for all applicants registered for the DV-2008 program ends as of September 30, 2008. DV visas may not be issued to DV-2008 applicants after that date. Similarly, spouses and children accompanying or following to join DV-2008 principals are only entitled to derivative DV status until September 30, 2008. DV visa availability through the very end of FY-2008 cannot be taken for granted. Numbers could be exhausted prior to September 30.

## C. ADVANCE NOTIFICATION OF THE DIVERSITY (DV) IMMIGRANT CATEGORY RANK CUT-OFFS WHICH WILL APPLY IN JANUARY

For **January**, immigrant numbers in the DV category are available to qualified DV-2008 applicants chargeable to all regions/eligible countries as follows. When an allocation cut-off number is shown, visas are available only for applicants with DV regional lottery rank numbers **BELOW** the specified allocation cut-off number:

| Region | All DV Chargeability Areas Except Those Listed Separately | |
|---|---|---|
| AFRICA | 13,100 | Except: Egypt: 11,000 Ethiopia: 8,600 Nigeria: 7,200 |
| ASIA | 6,100 | |
| EUROPE | 13,600 | |
| NORTH AMERICA (BAHAMAS) | 3 | |
| OCEANIA | 775 | |
| SOUTH AMERICA, and the CARIBBEAN | 1,075 | |

## D. CHINA-MAINLAND BORN AND INDIA EMPLOYMENT SECOND PREFERENCE CUT-OFF DATES RETROGRESS FOR DECEMBER

It has been necessary to retrogress both the China-mainland born and India Employment Second preference cut-off dates. This is a direct result of extraordinarily heavy applicant demand for numbers, primarily by Citizenship and Immigration Services offices for adjustment of status cases. Additional retrogressions cannot be ruled out during the second quarter of the fiscal year.

## E. IMMIGRANT VISA AVAILABILITY DURING THE COMING MONTHS

The following projections are based on the demand patterns which are currently being experienced. Fluctuations in demand could alter such projections at any time. Therefore, they should only be used as a guideline of what might occur. Under no circumstances should they be used as a basis for making any formal plans prior to the announcement of the monthly cut-off dates.

**Family Preferences - Worldwide:** Movement consistent with that of recent months can be expected for the foreseeable future.

**Employment Preferences - Worldwide and Philippines:**

First:  Will remain "Current"

Second:  Will remain "Current"

Third:  Slow forward movement should be possible while demand patterns are established.

Third "Other Workers" (All Countries):  Little if any forward movement is expected at this time.  Should the current demand pattern continue, it may be necessary to retrogress the cut-off date at some point later in the fiscal year.

**CHINA-mainland born and INDIA:**

Employment Preferences:

First:  Continued heavy demand may require the establishment of a cut-off date at some point during the fiscal year.

Second:  Demand during October and the first week of November has already used over 38 percent of the annual limit.  It is hoped that the December retrogressions will return monthly number use within the target range.  If not, further retrogressions cannot be ruled out.

## F. OBTAINING THE MONTHLY VISA BULLETIN

The Department of State's Bureau of Consular Affairs offers the monthly "Visa Bulletin" on the INTERNET'S WORLDWIDE WEB.  The INTERNET Web address to access the Bulletin is:

**http://travel.state.gov**

From the home page, select the VISA section which contains the Visa Bulletin.

To be **placed on** the Department of State's E-mail subscription list for the "Visa Bulletin", please send an E-mail to the following E-mail address:

**listserv@calist.state.gov**

and in the message body type:
**Subscribe Visa-Bulletin** *First name/Last name*
*(example:  Subscribe Visa-Bulletin  Sally Doe)*

To be **removed from** the Department of State's E-mail subscription list for the  "Visa Bulletin", send an e-mail message to the following E-mail address:

**listserv@calist.state.gov**

and in the message body type: **Signoff Visa-Bulletin**

The Department of State also has available a recorded message with visa cut-off dates which can be heard at: (area code 202) 663-1541. The recording is normally updated by the middle of each month with information on cut-off dates for the following month.

Readers may submit questions regarding Visa Bulletin related items by E-mail at the following address:

**VISABULLETIN@STATE.GOV**

(This address cannot be used to subscribe to the Visa Bulletin.)

Department of State Publication 9514
CA/VO:November 13, 2007

# Exhibit C

# Visa Bulletin

*Number 114*
*Volume VIII*
*Washington, D.C.*

## VISA BULLETIN FOR JANUARY 2008

### A. STATUTORY NUMBERS

1. This bulletin summarizes the availability of immigrant numbers during **January**. Consular officers are required to report to the Department of State documentarily qualified applicants for numerically limited visas; the Bureau of Citizenship and Immigration Services in the Department of Homeland Security reports applicants for adjustment of status. Allocations were made, to the extent possible under the numerical limitations, for the demand received by December **10th** in the chronological order of the reported priority dates. If the demand could not be satisfied within the statutory or regulatory limits, the category or foreign state in which demand was excessive was deemed oversubscribed. The cut-off date for an oversubscribed category is the priority date of the first applicant who could not be reached within the numerical limits. Only applicants who have a priority date **earlier than** the cut-off date may be allotted a number. Immediately that it becomes necessary during the monthly allocation process to retrogress a cut-off date, supplemental requests for numbers will be honored only if the priority date falls within the new cut-off date.

2. Section 201 of the Immigration and Nationality Act (INA) sets an annual minimum family-sponsored preference limit of 226,000. The worldwide level for annual employment-based preference immigrants is at least 140,000. Section 202 prescribes that the per-country limit for preference immigrants is set at 7% of the total annual family-sponsored and employment-based preference limits, i.e., 25,620. The dependent area limit is set at 2%, or 7,320.

3. Section 203 of the INA prescribes preference classes for allotment of immigrant visas as follows:

### FAMILY-SPONSORED PREFERENCES

**First:** Unmarried Sons and Daughters of Citizens: 23,400 plus any numbers not required for fourth preference.

**Second:** Spouses and Children, and Unmarried Sons and Daughters of Permanent

Residents: 114,200, plus the number (if any) by which the worldwide family preference level exceeds 226,000, and any unused first preference numbers:

A. Spouses and Children: 77% of the overall second preference limitation, of which 75% are exempt from the per-country limit;

B. Unmarried Sons and Daughters (21 years of age or older): 23% of the overall second preference limitation.

**Third:** Married Sons and Daughters of Citizens: 23,400, plus any numbers not required by first and second preferences.

**Fourth:** Brothers and Sisters of Adult Citizens: 65,000, plus any numbers not required by first three preferences.

### EMPLOYMENT-BASED PREFERENCES

**First:** Priority Workers: 28.6% of the worldwide employment-based preference level, plus any numbers not required for fourth and fifth preferences.

**Second:** Members of the Professions Holding Advanced Degrees or Persons of Exceptional Ability:

28.6% of the worldwide employment-based preference level, plus any numbers not required by first preference.

**Third:** Skilled Workers, Professionals, and Other Workers: 28.6% of the worldwide level, plus any numbers not required by first and second
preferences, not more than 10,000 of which to "Other Workers".

**Fourth:** Certain Special Immigrants: 7.1% of the worldwide level.

**Fifth:** Employment Creation: 7.1% of the worldwide level, not less than 3,000 of which reserved for investors in a targeted rural or high-unemployment area, and 3,000 set aside for investors in regional centers by Sec. 610 of P.L. 102-395.

4. INA Section 203(e) provides that family-sponsored and employment-based preference visas be issued to eligible immigrants in the order in which a petition in behalf of each has been filed. Section 203(d) provides that spouses and children of preference immigrants are entitled to the same status, and the same order of consideration, if accompanying or following to join the principal. The visa prorating provisions of Section 202(e) apply to allocations for a foreign state or dependent area when visa demand exceeds the per-country limit. These provisions apply at present to the following oversubscribed chargeability areas: CHINA-mainland born, INDIA, MEXICO, and PHILIPPINES.

5. On the chart below, the listing of a date for any class indicates that the class is oversubscribed (see paragraph 1); "C" means current, i.e., numbers are available for all qualified applicants; and "U" means unavailable, i.e., no numbers are available. (NOTE: Numbers are available only for applicants whose priority date is **earlier** than the cut-off date listed below.)

| Fam-ily | All Charge-ability Areas Except Those Listed | CHINA-mainland born | INDIA | MEXICO | PHILIPP-INES |
|---|---|---|---|---|---|
| 1st | 01FEB02 | 01FEB02 | 01FEB02 | 01JUL92 | 22NOV92 |
| 2A | 22FEB03 | 22FEB03 | 22FEB03 | 01MAY02 | 22FEB03 |
| 2B | 22NOV98 | 22NOV98 | 22NOV98 | 22MAR92 | 15JAN97 |
| 3rd | 08MAY00 | 08MAY00 | 08MAY00 | 08JUL92 | 01APR91 |
| 4th | 08JUL97 | 01NOV96 | 15SEP96 | 01OCT94 | 01FEB86 |

**\*NOTE:** For January, 2A numbers **EXEMPT from per-country limit** are available to applicants from all countries with priority dates **earlier** than 01MAY02. 2A numbers **SUBJECT to per-country limit** are available to applicants chargeable to all countries **EXCEPT MEXICO** with priority dates beginning 01MAY02 and earlier than 22FEB03. (All 2A numbers provided for MEXICO are exempt from the per-country limit; there are no 2A numbers for MEXICO subject to per-country limit.)

| | All Charge-ability Areas Except Those Listed | CHINA-mainland born | INDIA | MEXICO | PHILIP-PINES |
|---|---|---|---|---|---|
| Employ-ment-Based | | | | | |
| 1st | C | C | C | C | C |
| 2nd | C | 01JAN03 | 01JAN00 | C | C |
| 3rd | 15OCT02 | 01NOV01 | 01MAY01 | 22APR01 | 15OCT02 |

| Other Workers | 01OCT01 | 01OCT01 | 01OCT01 | 01OCT01 | 01OCT01 |
|---|---|---|---|---|---|
| 4th | C | C | C | C | C |
| Certain Religious Workers | C | C | C | C | C |
| 5th | C | C | C | C | C |
| Targeted Employ-ment Areas/ Regional Centers | C | C | C | C | C |

The Department of State has available a recorded message with visa availability information which can be heard at: (area code 202) 663-1541. This recording will be updated in the middle of each month with information on cut-off dates for the following month.

Employment Third Preference Other Workers Category: Section 203(e) of the NACARA, as amended by Section 1(e) of Pub. L. 105-139, provides that once the Employment Third Preference Other Worker (EW) cut-off date has reached the priority date of the latest EW petition approved prior to November 19, 1997, the 10,000 EW numbers available for a fiscal year are to be reduced by up to 5,000 annually beginning in the following fiscal year. This reduction is to be made for as long as necessary to offset adjustments under the NACARA program. Since the EW cut-off date reached November 19, 1997 during Fiscal Year 2001, the reduction in the EW annual limit to 5,000 began in Fiscal Year 2002.

## B. DIVERSITY IMMIGRANT (DV) CATEGORY

Section 203(c) of the Immigration and Nationality Act provides a maximum of up to 55,000 immigrant visas each fiscal year to permit immigration opportunities for persons from countries other than the principal sources of current immigration to the United States. The Nicaraguan and Central American Relief Act (NACARA) passed by Congress in November 1997 stipulates that beginning with DV-99, and for as long as necessary, up to 5,000 of the 55,000 annually-allocated diversity visas will be made available for use under the NACARA program. **This reduction has resulted in the DV-2008 annual limit being reduced to 50,000.** DV visas are divided among six geographic regions. No one country can receive more than seven percent of the available diversity visas in any one year.

For **January**, immigrant numbers in the DV category are available to qualified DV-2008 applicants chargeable to all regions/eligible countries as follows. When an allocation cut-off number is shown, visas are available only for applicants with DV regional lottery rank numbers **BELOW** the specified allocation cut-off number:

| Region | All DV Chargeability Areas Except Those Listed Separately | |
|---|---|---|
| AFRICA | 13,100 | Except: Egypt: 11,000 Ethiopia: 8,600 Nigeria: 7,200 |
| ASIA | 6,100 | |
| EUROPE | 13,600 | |
| NORTH | | |

| AMERICA (BAHAMAS) | 3 | |
| OCEANIA | 775 | |
| SOUTH AMERICA, and the CARIBBEAN | 1,075 | |

Entitlement to immigrant status in the DV category lasts only through the end of the fiscal (visa) year for which the applicant is selected in the lottery. The year of entitlement for all applicants registered for the DV-2008 program ends as of September 30, 2008. DV visas may not be issued to DV-2008 applicants after that date. Similarly, spouses and children accompanying or following to join DV-2008 principals are only entitled to derivative DV status until September 30, 2008. DV visa availability through the very end of FY-2008 cannot be taken for granted. Numbers could be exhausted prior to September 30.

## C. ADVANCE NOTIFICATION OF THE DIVERSITY (DV) IMMIGRANT CATEGORY RANK CUT-OFFS WHICH WILL APPLY IN FEBRUARY

For **February**, immigrant numbers in the DV category are available to qualified DV-2008 applicants chargeable to all regions/eligible countries as follows. When an allocation cut-off number is shown, visas are available only for applicants with DV regional lottery rank numbers **BELOW** the specified allocation cut-off number:

| Region | All DV Chargeability Areas Except Those Listed Separately | |
|---|---|---|
| AFRICA | 16,200 | Except: Egypt: 13,300 Ethiopia: 10,200 Nigeria: 7,700 |
| ASIA | 6,900 | |
| EUROPE | 15,300 | |
| NORTH AMERICA (BAHAMAS) | 5 | |
| OCEANIA | 850 | |
| SOUTH AMERICA, and the CARIBBEAN | 1,175 | |

## D. INDIA EMPLOYMENT SECOND PREFERENCE CUT-OFF DATE RETROGRESSION FOR JANUARY

It has been necessary to once again retrogress the India Employment Second preference cut-off date. This is a direct result of continued heavy applicant demand for numbers by CIS for adjustment of status cases despite the retrogression which occurred for December. It is likely that the annual limit for this category will be reached within the next few months, at which time the category would become "unavailable" for the remainder of fiscal year 2008.

## E. OBTAINING THE MONTHLY VISA BULLETIN

The Department of State's Bureau of Consular Affairs offers the monthly "Visa Bulletin" on the INTERNET'S WORLDWIDE WEB. The INTERNET Web address to access the Bulletin is:

**http://travel.state.gov**

From the home page, select the VISA section which contains the Visa Bulletin.

To be **placed on** the Department of State's E-mail subscription list for the "Visa Bulletin", please send an E-mail to the following E-mail address:

**listserv@calist.state.gov**

and in the message body type:
**Subscribe Visa-Bulletin** *First name/Last name*
*(example: Subscribe Visa-Bulletin  Sally Doe)*

To be **removed from** the Department of State's E-mail subscription list for the "Visa Bulletin", send an e-mail message to the following E-mail address:

**listserv@calist.state.gov**

and in the message body type: **Signoff Visa-Bulletin**

The Department of State also has available a recorded message with visa cut-off dates which can be heard at: (area code 202) 663-1541. The recording is normally updated by the middle of each month with information on cut-off dates for the following month.

Readers may submit questions regarding Visa Bulletin related items by E-mail at the following address:

**VISABULLETIN@STATE.GOV**

(This address cannot be used to subscribe to the Visa Bulletin.)

Department of State Publication 9514
CA/VO: December 10, 2007

# Exhibit D

1

2

3                     UNITED STATES DISTRICT COURT

4                     FOR THE DISTRICT OF COLUMBIA

5

6   Zaigang Liu,                          )   Case No.: 1:07CV00263
                                          )
7              Plaintiff,                 )
        vs.                               )   Declaration of Bradley J. Brouillette
8                                         )
    Paul Novak, Director, Vermont Service Center )
9   U.S Department of Homeland Security, U.S.    )
    Citizenship and Immigration Services; Emilio )
10  Gonzalez, Director, U.S. Citizenship and     )
    Immigration Services; Robert S. Mueller, III, )
11  Director, Federal Bureau of Investigation,

12             Defendants

13

14  I, BRADLEY J. BROUILLETTE declare as follows:

15  1.    I am employed by the United States Citizenship and Immigration Services (hereinafter

16        "USCIS") as a Supervisory Center Adjudications Officer at the Vermont Service Center

17        (hereinafter "VSC"), in St. Albans, Vermont. I have held this position since December

18        2003. I have been employed by the agency in various capacities since November 1995. I

19        make this declaration based on my personal knowledge and my review of official

20        documents and records maintained by the USCIS. If called to testify, I could and would

21        do so competently.

22

23  2.    This declaration is submitted in support of Defendants' motion to dismiss in the case of

24        Zaigang Liu v. Novak et al., 1:07CV00263, now pending before the United States

25        District Court for the District of Columbia. It provides a factual summary of the agency's

26        adjudication policy as well as a review of the plaintiff's file.

27

                                        1

3.    When a visa petition or other application seeking an immigration benefit on behalf of an alien is filed with USCIS, the agency conducts numerous mandatory criminal and national security background checks.  These checks are conducted both to enhance national security and ensure the integrity of the immigration process.  These security and background checks serve to screen out aliens who may seek to harm the United States and its citizens or who may be seeking immigration benefits improperly or fraudulently.  These security checks have yielded information about applicants involved in violent crimes, sex crimes, crimes against children, drug trafficking and individuals with known links to terrorism.  Pursuant to established agency policy, all required security checks must be completed prior to adjudication of the application.

4.    The attached Fact Sheet explains the different types of checks that must be completed.  (See Fact Sheet, dated April 25, 2006, a true and correct copy of which is attached hereto as Exhibit 1).  The checks include the FBI Name Check, FBI fingerprint check, and the DHS-managed Interagency Border Inspection System (IBIS).  The records maintained in the FBI name check process consist of administrative, applicant, criminal, personnel and other files compiled by law enforcement agencies.  Although in the majority of FBI name checks no matches are found, some cases involve complex or highly sensitive information and cannot be resolved quickly.  The IBIS system contains records and information from more than 20 federal law enforcement and intelligence agencies including the Central Intelligence Agency (CIA), FBI and other divisions of the U.S. Department of Justice, the Department of State, DHS Customs and Border Protection (CBP) and other DHS agencies.  It is a multi-agency effort with a central system that combines information from these various sources and databases to compile information regarding national security risks, public safety concerns, and other law enforcement concerns.  IBIS provides, but is not limited to, information related to persons who are wanted criminals, persons of interest in the context of national security, and other derogatory information, including adverse immigration history.  While the

2

1   results of an IBIS query are usually available immediately, in some cases information

2   found will require further investigation. Finally, FBI fingerprint checks provide

3   information relating to criminal background within the United States. Results are

4   usually received within days and while the vast majority results in no criminal record,

5   positive results may have a direct bearing on the eligibility of an applicant for the

6   immigration benefit being sought.

7   5.   Once USCIS receives an I-485 a file is opened and an electronic record of that

8   application is created. Much of this initial electronic processing and data entry is

9   automated, including the automatic generation and electronic transmission of a FBI name

10   check request in FBIQUERY, the FBI repository and tracking system for FBI Name

11   Check requests. Once the initial file creation and processing of an I-485 application is

12   complete, each file is placed on an I-485 pending shelf for processing and adjudication in

13   chronological order according to date of receipt.

14

15   6.   Due to bi-specialization, the VSC no longer accepts any new I-485 applications. All

16   pending cases being held for FBI name and date of birth check clearance and Visa

17   Availability have been sent to the Texas Service Center. The VSC has retained

18   approximately 15,000 pending cases in which the adjudicative process had already begun

19   and the adjudication of those cases will be completed at the VSC.

20

21   7.   VSC periodically runs an electronic report in FBIQUERY system for all files on the I-

22   485 pending shelf to confirm the successful transmission of the FBI Name Check request

23   and to identify those applications that have received responses from the FBI name checks

24   and FD-258 (fingerprints) and are thus ready for adjudication. FBI name check requests

25   that have been received by the FBI but have not yet been completed are indicated by a

26   notation of "Pending" in FBIQUERY. An FBI Name Check that has been completed will

27

1  be indicated by various entries depending on the result, including No Record, Positive

2  Response, etc.

3  8.  This report will also identify those I-485 applications that have received a "No Data" or

4  "Error" response in FBIQUERY indicating a problem with transmission of the name

5  check request from USCIS to the FBI.  If such a problem is reported, the FBI name check

6  requests will then be initiated a second time and resent manually or electronically to the

7  FBI for a response.  In this way USCIS ensures that the FBI has in fact received all

8

9  requests for name checks.

10  9.  All files on the FBI Name Check Shelf are audited regularly in order to identify those in

11  which a response from the FBI has been received.  This audit is conducted at least every

12  three weeks or more often.  In this manner the agency ensures that as FBI responses are

13  received, files are expeditiously released for adjudication.  FBIQUERY reports do not

14  provide USCIS with any indication as to what information the FBI may have relating to a

15  particular alien, whether an FBI investigation into the particular alien has been

16

17  undertaken, or whether there are national security concerns relating to that alien.

18  10.  For most applicants, USCIS can quickly determine if there are criminal or security

19  related issues in the applicant's background that affect eligibility for immigration

20  benefits.  However, due both to the sheer volume of security checks USCIS conducts,

21  and the fact that USCIS must await responses from the FBI or other relevant agencies

22  that conduct some of the required security checks, some delays on individual

23  applications are unavoidable and may be lengthy.  Moreover, in some cases a

24  background or security check will reveal that positive (derogatory) information on the

25  subject alien is possessed by some agency other than USCIS without necessarily

26  revealing the substance of that information.  In such cases, USCIS works closely with

27  the other law enforcement or intelligence agencies to obtain all available information

4

concerning the positive result in order to properly evaluate its significance. Even where the FBI or a third agency has provided a final response, a case may still be considered pending where the response requires further investigation or review by USCIS or another agency. It is vitally important to thoroughly screen each applicant in order to resolve all concerns of a law enforcement or national security nature before determining that an individual is eligible for an immigration benefit.

11. The agency's policy for requesting expedited security checks requires that the applicant meet one of the following criteria:

    1. Military Deployment.

    2. Age-out cases not covered by the Child Status Protection Act and applications affected by sunset provisions such as the Diversity Visa Program.

    3. Compelling reasons provided by the requesting office such as critical medical conditions.

    4. Loss of Social Security benefits or other subsistence at the discretion of the Director.

U.S. Citizenship and Immigration Services (USCIS) is no longer routinely requesting the FBI to expedite a name check when the only reason for the request is that a mandamus (or other federal court petition) is filed in the case.

12. USCIS reports the average processing times for specific applications and petitions on the USCIS website. This information reflects only average processing times on the date the information is published. Average processing times fluctuate widely and will sometimes even regress for a specific form type due to a number of factors, including a reallocation of agency resources, reordering of the agency's priorities, and other reasons. Additionally, not every application will require the same level of inquiry. Some may

5

1   require a more detailed level of review and or investigation from either the USCIS or

2   other agencies for a number of reasons ranging from the alien's eligibility for the benefit

3   sought to national security concerns.  Accordingly, even when it appears that the

4   adjudication of a particular application is outside the average processing time, this does

5   not establish that the delay is unreasonable or even due to factors within the control of

6   
7   USCIS.

8   13.   The FBI has an established process of processing FBI Name Check requests from USCIS

9   chronologically based on the date the request is forwarded.  As stated above, certain

10   requests can be expedited if they meet specific expedite criteria.  However, it is important

11   to note that whenever a particular application or petition receives expedited processing

12   and is moved up in the queue, it is at the expense of those still unadjudicated petitions or

13   
14   applications that bear an earlier filing date.  There is no statutory or regulatory time limit

15   for the adjudication of I-485s.  Moreover, an alien who has applied for adjustment of

16   status may apply for and obtain employment authorization for the entire time his or her

17   application is pending. Most applicants for adjustment of status may also apply for and

18   obtain advance parole to enable them to travel abroad during the pendency of their

19   application.  Thus, applicants for adjustment of status are not as adversely affected by

20   delays in the adjudication of their applications as are aliens filing for other immigration

21   
22   benefits.

23   14.   In my capacity as a Supervisory Center Adjudications Officer at the VSC, I have access

24   to the official files and records of the USCIS.  I have reviewed the system records for

25   plaintiff LIU, Zaigang, A97 486 586.  The record reflects that on July 23, 2003, plaintiff

26   Liu filed an application for adjustment of status to permanent resident on Form I-485.

27

6

1    Plaintiff seeks adjustment as a derivative beneficiary on an approved I-140 employment

2    based visa petition for his spouse Lu Zhang. To date, plaintiff's application remains

3    pending the completion of security checks. Once the required security checks are

4    completed, the plaintiff's application will be adjudicated.

5

6    15.    Because the plaintiff's case does not meet one of the above-mentioned expedite criteria,

7    the agency is unable to request an expedite of the security check clearance on his behalf.

8    For this reason the USCIS cannot adjudicate plaintiff's I-485 application for adjustment

9    of status until such time as all security checks are complete.

10

11    I declare under penalty of perjury that the foregoing is true and correct. Executed this

12    23rd day of April, 2007 at St. Albans, Vermont.

13

14

15

16    Bradley J. Brouillette
      Supervisory Center Adjudications Officer
17    Vermont Service Center

18

19

20

21

22

23

24

25

26

27

7

*Press Office*
**U.S. Department of Homeland Security**



**U.S. Citizenship and Immigration Services**

# Fact Sheet

April 25, 2006

### Immigration Security Checks—How and Why the Process Works

**Background**

All applicants for a U.S. immigration benefit are subject to criminal and national security background checks to ensure they are eligible for that benefit. U.S. Citizenship and Immigration Services (USCIS), the Federal agency that oversees immigration benefits, performs checks on every applicant, regardless of ethnicity, national origin or religion.

Since 2002, USCIS has increased the number and scope of relevant background checks, processing millions of security checks without incident. However, in some cases, USCIS customers and immigrant advocates have expressed frustration over delays in processing applications, noting that individual customers have waited a year or longer for the completion of their adjudication pending the outcome of security checks. While the percentage of applicants who find their cases delayed by pending background checks is relatively small, USCIS recognizes that for those affected individuals, the additional delay and uncertainty can cause great anxiety. Although USCIS cannot guarantee the prompt resolution of every case, we can assure the public that applicants are not singled out based on race, ethnicity, religion, or national origin.

USCIS strives to balance the need for timely, fair and accurate service with the need to ensure a high level of integrity in the decision-making process. This fact sheet outlines the framework of the immigration security check process, explaining its necessity, as well as factors contributing to delays in resolving pending cases.

**Why USCIS Conducts Security Checks**

USCIS conducts security checks for all cases involving a petition or application for an immigration service or benefit. This is done both to enhance national security and ensure the integrity of the immigration process. USCIS is responsible for ensuring that our immigration system is not used as a vehicle to harm our nation or its citizens by screening out people who seek immigration benefits improperly or fraudulently. These security checks have yielded information about applicants involved in violent crimes, sex crimes, crimes against children, drug trafficking and individuals with known links to terrorism. These investigations require time, resources, and patience and USCIS recognizes that the process is slower for some customers than they would like. Because of that, USCIS is working closely with the FBI and other agencies to speed the background check process. However, USCIS will never grant an immigration service or benefit before the required security checks are completed regardless of how long those checks take.

Immigration Security Checks—How and Why the Process Works

---

### How Immigration Security Checks Work

To ensure that immigration benefits are given only to eligible applicants, USCIS adopted background security check procedures that address a wide range of possible risk factors. Different kinds of applications undergo different levels of scrutiny. USCIS normally uses the following three background check mechanisms but maintains the authority to conduct other background investigations as necessary:

- **The Interagency Border Inspection System (IBIS) Name Check**— IBIS is a multiagency effort with a central system that combines information from multiple agencies, databases and system interfaces to compile data relating to national security risks, public safety issues and other law enforcement concerns. USCIS can quickly check information from these multiple government agencies to determine if the information in the system affects the adjudication of the case. Results of an IBIS check are usually available immediately. In some cases, information found during an IBIS check will require further investigation. The IBIS check is not deemed completed until all eligibility issues arising from the initial system response are resolved.

- **FBI Fingerprint Check**—FBI fingerprint checks are conducted for many applications. The FBI fingerprint check provides information relating to criminal background within the United States. Generally, the FBI forwards responses to USCIS within 24-48 hours. If there is a record match, the FBI forwards an electronic copy of the criminal history (RAP sheet) to USCIS. At that point, a USCIS adjudicator reviews the information to determine what effect it may have on eligibility for the benefit. Although the vast majority of inquiries yield no record or match, about 10 percent do uncover criminal history (including immigration violations). In cases involving arrests or charges without disposition, USCIS requires the applicant to provide court certified evidence of the disposition. Customers with prior arrests should provide complete information and certified disposition records at the time of filing to avoid adjudication delays or denial resulting from misrepresentation about criminal history. Even expunged or vacated convictions must be reported for immigration purposes.

- **FBI Name Checks**—FBI name checks are also required for many applications. The FBI name check is totally different from the FBI fingerprint check. The records maintained in the FBI name check process consist of administrative, applicant, criminal, personnel and other files compiled by law enforcement. Initial responses to this check generally take about two weeks. In about 80 percent of the cases, no match is found. Of the remaining 20 percent, most are resolved within six months. Less than one percent of cases subject to an FBI name check remain pending longer than six months. Some of these cases involve complex, highly sensitive information and cannot be resolved quickly. Even after FBI has provided an initial response to USCIS concerning a match, the name check is not complete until full information is obtained and eligibility issues arising from it are resolved.

For most applicants, the process outlined above allows USCIS to quickly determine if there are criminal or security related issues in the applicant's background that affect eligibility for immigration benefits. Most cases proceed forward without incident. However, due to both the sheer volume of security checks USCIS conducts, and the need to ensure that each applicant is thoroughly screened, some delays on individual applications are inevitable. Background checks may still be considered pending when either the FBI or relevant agency has not provided the final response to the background check or when the FBI or agency has provided a response, but the response requires further investigation or review by the agency or USCIS. Resolving pending cases is time-consuming and labor-intensive; some cases legitimately take months or even

**Immigration Security Checks—How and Why the Process Works**

several years to resolve.  Every USCIS District Office performs regular reviews of the pending caseload to determine when cases have cleared and are ready to be decided.  USCIS does not share information about the records match or the nature or status of any investigation with applicants or their representatives.

# Exhibit E

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

ZIAGANG LIU,

         Plaintiff,

         v.

PAUL NOVAK,
         et al.,

         Defendants.

Case No:
07-CV-00263

## DECLARATION OF MICHAEL A. CANNON

Michael A. Cannon, pursuant to 28 U.S.C. § 1746, declares the following:

(1)   I am currently the Section Chief of the National Name Check Program Section at the Headquarters of the Federal Bureau of Investigation ("FBI") in Washington, D.C. I have held that position since March 7, 2005.

(2)   In my current capacity as Section Chief, I supervise the National Name Check Units. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3)   Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the policy and the procedures of the United States Citizenship and Immigration Services ("USCIS"). Specifically, I am aware of the name check request for Zaigang Liu, the plaintiff in this civil action.

## NATIONAL NAME CHECK PROGRAM

(4)   The National Name Check Program ("Program") has the mission of disseminating information from the FBI's Central Records System in response to requests submitted by federal agencies, congressional committees, the federal judiciary, friendly foreign

police and intelligence agencies, and state and local criminal justice agencies. The Central Records System ("CRS") contains the FBI's administrative, personnel, and investigative files. The Program has its genesis in Executive Order No. 10450, issued during the Eisenhower Administration. That executive order addresses personnel security issues and mandates National Agency Checks as part of the pre-employment vetting and background investigation process for prospective Government employees. The FBI performs the primary National Agency Check conducted on all United States Government employees. From this modest beginning, the Program has grown exponentially, with more and more customers seeking background information from FBI files on individuals before bestowing a privilege, such as Government employment or an appointment, a security clearance, attendance at a White House function, a "green card" or naturalization, admission to the bar, or a visa. More than 70 federal, state, and local agencies regularly request FBI name searches. In addition to serving our regular Government customers, the FBI conducts numerous name searches in direct support of the FBI's counterintelligence, counterterrorism, and homeland security efforts.

## EXPLANATION OF THE CENTRAL RECORDS SYSTEM

(5)    The FBI's CRS enables the FBI to maintain all information which it has acquired in the course of fulfilling mandated law enforcement responsibilities. The records maintained in the CRS consist of administrative, applicant, criminal, personnel, and other files compiled for law enforcement purposes. This system consists of a numerical sequence of files broken down according to subject matter. The subject matter of a file may relate to an individual, organization, company, publication, activity, or foreign intelligence matter. Certain records in the system are maintained at FBI Headquarters. Records which are pertinent to specific FBI Field Offices are mostly maintained at those Field Offices.

(6)    FBI Headquarters and each Field Division can access the CRS through the FBI's General Indices. The General Indices are arranged in alphabetical order and consist of indices on various subjects, including the names of individuals and organizations. Only the information considered pertinent, relevant, or essential for future retrieval is indexed.

2

(7)    Communications directed to FBI Headquarters from various Field Offices and Legal Attaches are filed in the pertinent case files and indexed to the names of individuals, groups, or organizations which are listed in the case captions or titles as subjects, suspects, or victims. Searches made in the index to locate records concerning particular subjects are made by searching the name of the subject requested in the index.

(8)    The entries in the General Indices fall into two categories:

(a)    "main" entries -- entries that carry the name corresponding with the subject of a file contained in the CRS.

(b)    "reference" entries -- entries (sometimes called "cross-references") that generally only mention or reference an individual, organization, etc., that is contained in a document located in another "main" file.

(9)    In 1995, the FBI implemented the Automated Case Support ("ACS") system for its Headquarters, Field Offices, and Legal Attaches. More than 105 million records were converted from automated systems previously utilized by the FBI. The ACS system consists of the following three automated applications that support case management functions for all investigative and administrative cases:

(a)    Investigative Case Management: This application provides the ability to open, assign, and close investigative and administrative cases as well as to set, assign, and track leads. A case is opened by the Office of Origin, which sets leads for itself and other field offices, as needed. The offices that receive the leads are referred to as Lead Offices. When a case is opened, it is assigned a Universal Case File Number, which is utilized by FBI Headquarters and all offices conducting or assisting in the investigation. Using fictitious file number "111-HQ-12345" as an example, an explanation of the Universal Case File Number is as follows: "111" indicates the classification for that specific type of investigation; "HQ" is the abbreviated form used for the Office of Origin of the investigation (in this case, FBI Headquarters); and "12345" indicates the individual case file number for that particular investigation.

(b)    Electronic Case File: This application serves as the central electronic repository for the FBI's official text-based documents. It supports the universal serial concept, where only the creator of a document serializes it into a file, providing single source entry of serials into the

3

computerized system. All serials originated by the Office
of Origin are maintained in the Office of Origin's case file.

(c)  Universal Index: This application, sometimes referred to as
"UNI", continues the universal concepts of the ACS system
by providing a complete subject/case index to all
investigative and administrative cases. Only the Office of
Origin is required to index. However, the Lead Offices
may index additional information as needed. The Universal
Index, which consists of an index of approximately 98.2
million records, functions to index names to cases, and to
search names and cases for use in the FBI investigative and
administrative cases. Names of individuals or entities are
recorded with identifying information such as the date or
place of birth, race, sex, locality, social security number,
address, or date of event.

(10)  The decision to index names other than subjects, suspects, and victims is a
discretionary decision made by the investigative FBI Special Agent, the supervisor in the field
division conducting the investigation, and the supervising FBI Special Agent at FBI
Headquarters. The FBI does not index every name in its files, but indexes only that information
considered pertinent, relevant, or essential for future retrieval. Without a "key" (index) to this
mass information, information essential to ongoing investigations could not be readily retrieved.
The FBI files would thus be merely archival in nature and could not be effectively used to serve
the mandated mission of the FBI, which is to investigate violations of federal criminal statutes.
Therefore, the General Indices to the CRS files are the means by which the FBI can determine
what retrievable information, if any, the FBI may have in its CRS files on a particular subject
matter.

(11)  When the FBI searches a person's name, the name is electronically
checked against the FBI's Universal Index. The searches seek all instances of the individual's
name, social security number, and dates close to his or her date of birth, whether a main file or
reference. As previously stated, any "main" file name would be that of an individual who is,
himself or herself, the subject of an FBI investigation, whereas any "reference" would be an
individual whose name appears as part of an FBI investigation. For example, "references"
include associates, witnesses, or conspirators. Additionally, there may be a myriad of other

4

reasons to explain why an FBI Special Agent conducting an investigation believed it important to include a particular name in the FBI's index for later recovery. The names are searched in a multitude of combinations, switching the order of first, last, and middle names, as well as combinations with only the first and last names, first and middle names, and so on. The Program application searches names phonetically against the Universal Index records and retrieves similar spelling variations (which is especially important considering that many names in our indices have been transliterated from a language other than English).

(12)    If there is a match with a name in a FBI record, it is designated as a "Hit," meaning that the system has stopped on a possible match with the name being checked. If a search comes up with a match to a name and either a birth date or social security number, it is designated an "Ident."

## RESOLUTION RATE

(13)    Historically, approximately 68 percent of the name checks submitted by USCIS are electronically checked and returned to USCIS as having "No Record" within 48-72 hours. A "No Record" indicates that the FBI's Universal Index database contains no identifiable information regarding a particular individual. Duplicate submissions (i.e., identically spelled names with identical dates of birth and other identical information submitted while the original submission is still pending) are not checked, and the duplicate findings are returned to USCIS within 48-72 hours.

(14)    For the name check requests that are still pending after the initial electronic check, additional review is required. A secondary manual name search completed typically within 30-60 days historically identifies an additional 22 percent of the USCIS requests as having "No Record," for a 90 percent overall "No Record" response rate. The results of this 22 percent also are returned to USCIS. The remaining 10 percent are identified as possibly being the subject of an FBI record. At that point, the FBI record must be retrieved and reviewed. If the record was electronically uploaded into the FBI's ACS electronic record-keeping system, it can be reviewed quickly. If not, however, the relevant information must be retrieved from an

5

existing paper record. Review of this information will determine whether the information is identified with the request. If the information is not identified with the request, the request is closed as a "No Record" and USCIS is so notified.

(15)    Once a record is retrieved, the FBI reviews the file for possible derogatory information. Less than one percent of USCIS's requests are identified with a file containing possible derogatory information. If appropriate, the FBI forwards a summary of the derogatory information to USCIS.

## GROWTH OF THE NAME CHECK PROGRAM

(16)    Prior to September 11, 2001, the FBI processed approximately 2.5 million name check requests per year. As a result of the FBI's post-9/11 counterterrorism efforts, the number of FBI name checks has grown. For fiscal year 2006, the FBI processed in excess of 3.4 million name checks.

## USCIS NAME CHECK REQUESTS

(17)    In November 2002, heightened national security concerns prompted a review of the former Immigration and Naturalization Service's ("INS's") procedures for investigating the backgrounds of individuals seeking immigration benefits. It was determined that deeper, more detailed clearance procedures were required to protect the people and the interests of the United States effectively. One of the procedures identified was the FBI's name check clearance. Before November 2002, only those "main" files that could be positively identified with an individual were considered responsive to the immigration authorities name check requests. However, because that approach ran a risk of missing a match to a possible derogatory record, the FBI altered its search criteria to include "reference" files, as well. From a processing standpoint, this meant the FBI was required to review many more files in response to each individual background check request.

(18)    In December of 2002 and January of 2003, the former INS resubmitted 2.7 million name check requests to the FBI for background investigations of all individuals with then-pending applications for immigrations benefits for which the Immigration and Nationality

Act required background investigations. Those 2.7 million requests were in addition to the regular submissions by the former INS. Currently, the FBI has returned an initial response to all 2.7 million resubmitted requests. Moreover, although many of the FBI's initial responses to those resubmitted requests indicated that the FBI had no information relating to the specific individual who was the subject of the request, approximately 16 percent – or over 440,000 – resubmitted requests indicated that the FBI may have information relating to the subject of the inquiry. The FBI is still in the process of resolving those 440,000 requests.

(19)    The FBI's processing of those 440,000 resubmissions has delayed the processing of regular submissions from USCIS. As directed by USCIS, the FBI processes name check requests on a "first-in, first-out" basis unless USCIS directs that a particular name check be expedited.

(20)    The FBI cannot provide a specific or general time frame for completing any particular name check submitted by USCIS. The processing of name checks, including those which are expedited, depends upon a number of factors, including where in the processing queue the name check lies; the workload of the analyst processing the name check; the volume of priority checks the analyst must process for, among others, military call-ups, medical emergencies, "age-outs," or immigration "lottery" winners; the number of "Hits," (i.e., possible matches) that must be retrieved, reviewed and resolved; the number of records from various Field Offices that must be retrieved, reviewed and resolved; and, more generally, the staff and resources available to conduct the checks. While the FBI is sensitive to the impact of the delays in processing name check requests, the consequence of the FBI's mission on homeland security requires that its name check process be primarily focused on providing accurate and thorough results. When the name check is completed, the FBI provides the results to USCIS as quickly as possible.

(21)    It is important to note that the FBI does not adjudicate applications for benefits under the Immigration and Nationality Act. If appropriate, the FBI generally provides a summary of available information to USCIS for its adjudication process.

7

## PLAINTIFF'S NAME CHECK REQUEST

(22)  The name check request for plaintiff Zaigang Liu was received by the FBI from USCIS on or about March 30, 2004, and has not been completed. The FBI is performing its check in response to USCIS's request in accordance with procedures outlined above. The results of the name check will be forwarded to USCIS in Washington, D.C., in due course, in accordance with the FBI's normal protocol.

(23)  Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this _13th_ day of April 2007.

MICHAEL A. CANNON
Section Chief
National Name Check Program Section
Records Management Division
Federal Bureau of Investigation
Washington, D.C.

8

# Exhibit F



U.S. Department of Justice

Federal Bureau of Investigation

*Washington, D.C. 20535*

September 22, 2006

MR JAYASEKHAR KOVURI
3414 BLACKSMITH STREET SOUTHEAST
OLYMPIA, WA  98501

Request No.:  1059067- 000
Subject: KOVURI, JAYASEKHAR

Dear Requester:

This is in response to your Freedom of Information-Privacy Acts (FOIPA) request noted above.

To promptly respond to requests, we concentrate on identifying main files in the central records system at FBI Headquarters. No records responsive to your FOIPA request were located by a search of the automated indices.

You may file an administrative appeal by writing to the Co-Director, Office of Information and Privacy, United States Department of Justice, 1425 New York Ave., NW, Suite 11050, Washington, D.C. 20530-0001, within sixty days from the date of this letter. The envelope and the letter should be clearly marked "Freedom of Information Appeal" or "Information Appeal." Please cite the FOIPA number assigned to your request so that it may be easily identified.

Enclosed for your information is a copy of the FBI File Fact Sheet.

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information
  Dissemination Section
Records Management Division

Enclosure



U.S. Department of Justice

Federal Bureau of Investigation

*Washington, D.C. 20535*

September 22, 2006

MS SWATHI NAGAMARUTHI KOVURI
3414 BLACKSMITH STREET SOUTHEAST
OLYMPIA, WA 98501

Request No.: 1059065- 000
Subject: KOVURI, SWATHI NAGAMARUTHI

Dear Requester:

This is in response to your Freedom of Information-Privacy Acts (FOIPA) request noted above.

To promptly respond to requests, we concentrate on identifying main files in the central records system at FBI Headquarters. No records responsive to your FOIPA request were located by a search of the automated indices.

You may file an administrative appeal by writing to the Co-Director, Office of Information and Privacy, United States Department of Justice, 1425 New York Ave., NW, Suite 11050, Washington, D.C. 20530-0001, within sixty days from the date of this letter. The envelope and the letter should be clearly marked "Freedom of Information Appeal" or "Information Appeal." Please cite the FOIPA number assigned to your request so that it may be easily identified.

Enclosed for your information is a copy of the FBI File Fact Sheet.

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information
  Dissemination Section
Records Management Division

Enclosure

# Exhibit G

U.S. Department of Homeland Security
Vermont Service Center
75 Lower Welden Street
St. Albans, VT 05479-0001



**U.S. Citizenship and Immigration Services**

November 10, 2004

SWATHI KOVURI C/O MR JAYASEKHAR KOVURI
2793 SW WINDSOR LN 1934
TUMWATER, WA 98512

Dear Swathi Kovuri C/o Mr Jayasekhar Kovuri:

On 10/28/2004 you, or the designated representative shown below, contacted USCIS about your case. Some of the key information given to us at that time was the following:

| | |
|---|---|
| Person who contacted us: | SWATHI KOVURI |
| Case type: | I-485 EMPLOYMENT BASED |
| Filing date: | 12/16/2002 |
| Type of Service Requested: | CASE STATUS |
| Receipt number: | EAC0308151808 |
| Beneficiary: | |

The status of this service request is:

Our computer systems show that your application is currently under review. Please allow 60 days to hear from this office.

For future status inquiries of a petition or application filed at this Center, or for live assistance from an Information Officer, you may want to utilize our automated phone system by calling (800) 375-5283. If you would like to obtain forms or filing instructions please visit our web site at www.uscis.gov (forms can be downloaded from this site).

Please remember that every person over the age of 14 who is not a U.S. citizen or in "A" or "G" nonimmigrant status must also notify the Department of Homeland Security within 10 days from when they move. To do this, please complete and mail in form AR-11. Where possible, please provide an A-number or other identifying numbers. You must complete the Form AR-11 and mail to the London, KY address. Failure to complete all applicable sections may delay processing of the form. Please disregard this notice if you have submitted an AR-11 form to DHS/USCIS within the last two weeks to the London, KY address.

Sincerely,

*Sandra T. Bushey*

Sandra T. Bushey
Acting Center Director

U.S. Department of Homeland Security
Vermont Service Center
75 Lower Welden Street
St. Albans, VT 05479-0001



U.S. Citizenship
and Immigration
Services

November 12, 2004

JAYASEKHAR KOVURI
2793 SW WINDSOR LN 1934
TUMWATER, WA 98512

Dear Jayasekhar Kovuri:

On 10/26/2004 you, or the designated representative shown below, contacted USCIS about your case. Some of the key information given to us at that time was the following:

| | |
|---|---|
| Person who contacted us: | JAYASEKHAR KOVURI |
| Case type: | I-485 EMPLOYMENT BASED |
| Filing date: | 12/16/2002 |
| Receipt number: | EAC0508151824 |
| Beneficiary: | |
| Your CIS Account Number: | |
| Type of Service Requested | CASE STATUS |

The status of this service request is:

Our computer systems show that your petition/application is still pending Service consideration. Please allow 90 days to hear from this office.

For future status inquiries of a petition or application filed at this Center, or for live assistance from an Information Officer, you may want to utilize our automated phone system by calling (800) 375-5283. If you would like to obtain forms or filing instructions please visit our web site at www.uscis.gov (forms can be downloaded from this site).

Please remember that every person over the age of 14 who is not a U.S. citizen or in "A" or "G" nonimmigrant status must also notify the Department of Homeland Security within 10 days from when they move. To do this, please complete and mail in form AR-11. Where possible, please provide an A-number or other identifying numbers. *You must complete the Form AR-11 and mail to to the London, KY address. Failure to complete all applicable sections may delay processing of the form.* Please disregard this notice if you have submitted an AR-11 form to DHS/USCIS within the last two weeks to the London, KY address.

Sincerely,

*Sandra T. Bushey*

Sandra T. Bushey
Acting Center Director

U.S. Department of Homeland Security
Vermont Service Center
75 Lower Welden Street
St. Albans, VT 05479-0001



U.S. Citizenship
and Immigration
Services

February 22, 2005

SWATHI KOVURI
2793 SW WINDSOR LN 1934
TUMWATER, WA 98512

Dear Swathi Kovuri:

On January, 21, 2005 you, or the designated representative shown below, contacted USCIS about your case. Some of the key information given to us at that time was the following:

| | |
|---|---|
| Person who contacted us: | SWATHI KOVURI |
| Case type: | I-485 EMPLOYMENT BASED |
| Filing date: | 12/16/2002 |
| Receipt number: | EAC0308151808 |
| Beneficiary: | |
| Your CIS Account Number: | |
| Type of Service Requested | CASE STATUS |

The status of this service request is:

The processing of your petition/application has been delayed. All petitions/applications received by this Service are required to have routine security checks that are resulting in delays of the adjudication of petitions/applications. As a result of the lack of manpower to complete the checks in a timely manner, we have no control over how long these checks will take. We can give no definite indication of when they will be completed. We apologize for the delay.

For future status inquiries of a petition or application filed at this Center, or for live assistance from an Information Officer, you may want to utilize our automated phone system by calling (800) 375-5283. If you would like to obtain forms or filing instructions please visit our web site at www.uscis.gov (forms can be downloaded from this site).

Please remember that every person over the age of 14 who is not a U.S. citizen or in "A" or "G" nonimmigrant status must also notify the Department of Homeland Security within 10 days from when they move. To do this, please complete and mail in form AR-11. Where possible, please provide an A-number or other identifying numbers. *You must complete the Form AR-11 and mail to to the London, KY address. Failure to complete all applicable sections may delay processing of the form.* Please disregard this notice if you have submitted an AR-11 form to DHS/USCIS within the last two weeks to the London, KY address.

Sincerely,

Paul E. Novak Jr.

Paul E. Novak, Jr.
Center Director

U.S. Department of Homeland Security
Vermont Service Center
75 Lower Welden Street
St. Albans, VT 05479-0001



**U.S. Citizenship
and Immigration
Services**

March 14, 2005

JAYASEKHAR KOVURI
2793 SW WINDSOR LN 1934
TUMWATER, WA 98512

Dear Jayasekhar Kovuri:

On February, 23, 2005 you, or the designated representative shown below, contacted USCIS about your case. Some of the key information given to us at that time was the following:

| | |
|---|---|
| Person who contacted us: | JAYASEKHAR KOVURI |
| Case type: | I-485 EMPLOYMENT BASED |
| Filing date: | 12/16/2002 |
| Receipt number: | EAC0308151824 |
| Beneficiary: | |
| Your CIS Account Number: | |
| Type of Service Requested | CASE STATUS |

The status of this service request is:

The processing of your petition/application has been delayed. All petitions/applications received by this Service are required to have routine security checks that are resulting in delays of the adjudication of petitions/applications. As a result of the lack of manpower to complete the checks in a timely manner, we have no control over how long these checks will take. We can give no definite indication of when they will be completed. We apologize for the delay.

For future status inquiries of a petition or application filed at this Center you may want to utilize our National Customer Service Center by calling (800) 375-5283. If you would like to obtain forms, filing instructions, case status or schedule an appointment with your local office, please visit our web site at www.uscis.gov (forms and appointments can be obtained from this site). You must use the InfoPass Appointment Scheduler prior to visiting your local office.

FINAL NOTE: Please remember that every person over the age of 14, who is not a U.S. citizen or in 'A' or 'G' nonimmigrant status, must also notify the Department of Homeland Security within 10 days from when they move. To do this, please complete and mail in Form AR-11.

Sincerely,

*Paul E. Novak Jr.*

Paul E. Novak, Jr.
Center Director

www.uscis.gov

U.S. Department of Homeland Security
Vermont Service Center
75 Lower Welden Street
St. Albans, VT 05479-0001



**U.S. Citizenship
and Immigration
Services**

June 22, 2005

JAYASEKHAR KOVURI
2793 WINDSOR LN SW 1934
TUMWATER, WA 98512

Dear Jayasekhar Kovuri:

On 02/14/2005 you, or the designated representative shown below, contacted USCIS about your case. Some of the key information given to us at that time was the following:

| | |
|---|---|
| Person who contacted us: | JAYASEKHAR KOVURI |
| Case type: | I-485 EMPLOYMENT BASED |
| Filing date: | 12/16/2002 |
| Type of Service Requested: | CASE STATUS |
| Receipt number: | EAC0308151824 |
| Beneficiary: | |

The status of this service request is:

The processing of your petition/application has been delayed. All petitions/applications received by this Service are required to have routine security checks that are resulting in delays of the adjudication of petitions/applications. We can give no definite indication of when they will be completed. We apologize for the delay.

For future status inquiries of a petition or application filed at this Center you may want to utilize our National Customer Service Center by calling (800) 375-5283. If you would like to obtain forms, filing instructions, case status or schedule an appointment with your local office, please visit our web site at www.uscis.gov (forms and appointments can be obtained from this site). You must use the InfoPass Appointment Scheduler prior to visiting your local office.

FINAL NOTE: Please remember that every person over the age of 14, who is not a U.S. citizen or in 'A' or 'G' nonimmigrant status, must also notify the Department of Homeland Security within 10 days from when they move. To do this, please complete and mail in Form AR-11.

Please remember that every person over the age of 14 who is not a U.S. citizen or in "A" or "G" nonimmigrant status must also notify the Department of Homeland Security within 10 days from when they move. To do this, please complete and mail in form AR-11. Where possible, please provide an A-number or other identifying numbers. You must complete the Form AR-11 and mail to the London, KY address. Failure to complete all applicable sections may delay processing of the form. Please disregard this notice if you have submitted an AR-11 form to DHS/USCIS within the last two weeks to the London, KY address.

Sincerely,

Paul E. Novak, Jr.
Center Director

# Exhibit H

U.S. Department of Homeland Security
Vermont Service Center
75 Lower Welden Street
St. Albans, VT
05479-0001



U.S. Citizenship
and Immigration
Services

Thursday, February 2, 2006

JAYASEKHAR KOVURI
3414 SE BLACKSMITH ST
OLYMPIA WA 98501

Dear JAYASEKHAR KOVURI:

On 12/28/2005 you, or the designated representative shown below, contacted us about your case. Some of the key information given to us at that time was the following:

| | |
|---|---|
| **Caller indicated they are:** | The applicant |
| **Attorney Name:** | Information not available |
| **Case type:** | I485 |
| **Filing date:** | 12/16/2002 |
| **Receipt #:** | EAC-03-081-51824 |
| **Beneficiary (if you filed for someone else):** | KOVURI, JAYASEKHAR |
| **Your USCIS Account Number (A-number):** | A096242234 |
| **Type of service requested:** | Case Status - Outside Processing Time |
| | Change of Address |

The status of this service request is:

The processing of your case has been delayed. A check of our records establishes that your case is not yet ready for decision, as the required investigation into your background remains open.

Until the background investigation is completed, we cannot move forward on your case. These background checks are required to be completed on all applicants who apply for the immigration benefit you are seeking. We will make every effort to make a decision on this case as soon as the background checks are complete. If you do not receive a decision or other notice of action from us within 6 months of this letter, please contact us by calling our customer service number provided below. Recently, you called us to update your address. We have updated your address in our systems and on your application or petition. Thank you for notifying us of your change of address. If you change your address again in the future, please contact customer service at the number provided below.

If you have any further questions, please call the National Customer Service Center at 1-800-375-5283.

One final note: When you called you or your representative asked us to update your address on your pending case for the purpose of processing. We have updated your address. Your address now appears on your application or petition as the address shown above.

U.S. Department of Homeland Security

U.S. Department of Homeland Security
Vermont Service Center
75 Lower Welden Street
St. Albans, VT
05479-0001



**U.S. Citizenship
and Immigration
Services**

Wednesday, August 30, 2006

JAYASEKHAR KOVURI
3414 BLACKSMITH STREET SE
OLYMPIA WA 98501

Dear JAYASEKHAR KOVURI:

On 07/26/2006 you, or the designated representative shown below, contacted us about your case. Some of the key information given to us at that time was the following:

| | |
|---|---|
| **Caller indicated they are:** | The applicant |
| **Attorney Name:** | Information not available |
| **Case type:** | I485 |
| **Filing date:** | Information not available |
| **Receipt #:** | EAC-03-081-51824 |
| **Beneficiary (if you filed for someone else):** | KOVURI, JAYASEKHAR |
| **Your USCIS Account Number (A-number):** | A96242234 |
| **Type of service requested:** | Case Status - Outside Processing Time |

The status of this service request is:

The address change has been applied to your application/petition.

The processing of your petition/application has been delayed. All petitions/applications received by this Service are required to have routine security checks that are resulting in delays of the adjudication of petitions/applications. We can give no definite indication of when they will be completed. We apologize for the delay.

If you have any further questions, please call the National Customer Service Center at 1-800-375-5283.

Please remember: By law, every person who is not a U.S. citizen and who is over the age of 14 must also notify the Department of Homeland Security within 10 days from when they move (persons in "A" or "G" nonimmigrant status are exempt from this requirement). If you have moved, please complete a Form AR-11 and mail it to the address shown on that form. If you do not have this form, you can download it from our website or you can call the National Customer Service Center at 1-800-375-5283 and we can order one for you. If you move, please call us with your new address information as soon as your move is complete. If you have already called us and given us this information, you do not need to call again.

U.S. Citizenship and Immigration Services

U.S. Department of Homeland Security
75 Lower Welden Street
St. Albans, VT 05479



U.S. Citizenship
and Immigration
Services

March 02, 2007

JAYASEKHAR  KOVURI
3414 SE BLACKSMITH ST
OLYMPIA WA  98501

A Number                  A096242234
File Receipt Number       EAC0308151824
Beneficiary:
Applicant/Petitioner Name   KOVURI, JAYASEKHAR

Dear Sir/Madam:

The processing of your case has been delayed. A check of our records establishes that your case is not yet
ready for decision, as the required security checks remain pending.

Until the security checks have been completed, we cannot move forward on your case. These security
checks are required to be completed on all applicants who apply for the immigration benefit you are
seeking. We will make every effort to make a decision on this case as soon as the security checks are
complete. If you do not receive a decision or other notice of action from us within 6 months of this letter,
please contact us by calling our customer service number provided below.

1-800- 375- 5283

If you would like more information about Immigration Security Checks, please visit our website at
www.uscis.gov/pressroom for the April 2006 fact sheet.

FINAL NOTE: Title 8, Code of Federal Regulations, Section 265.1 states in pertinent part, "Except for those
exempted by section 263 (b) of the Act, all aliens in the United States required to register under section 262 of
the Act shall report each change of address and new address within 10 days on Form AR-11."

Sincerely,

Paul E. Novak Jr.

Paul E. Novak Jr.
Center Director

U.S. Department of Homeland Security
75 Lower Welden Street
St. Albans, VT 05479



U.S. Citizenship
and Immigration
Services

March 02, 2007

SWATHI N KOVURI
MR JAYASEKHAR KOVURI
3414 BLACKSMITH ST SE
OLYMPIA WA 98501

A Number                    A096242235
File Receipt Number         EAC0308151808
Beneficiary:
Applicant/Petitioner Name   KOVURI, SWATHI N

Dear Sir/Madam:

The processing of your case has been delayed. A check of our records establishes that your case is not yet ready for decision, as the required security checks remain pending.

Until the security checks have been completed, we cannot move forward on your case. These security checks are required to be completed on all applicants who apply for the immigration benefit you are seeking. We will make every effort to make a decision on this case as soon as the security checks are complete. If you do not receive a decision or other notice of action from us within 6 months of this letter, please contact us by calling our customer service number provided below.

1-800-375-5283

If you would like more information about Immigration Security Checks, please visit our website at www.uscis.gov/pressroom for the April 2006 fact sheet.

FINAL NOTE: Title 8, Code of Federal Regulations, Section 265.1 states in pertinent part, "Except for those exempted by section 263(b) of the Act, all aliens in the United States required to register under section 262 of the Act shall report each change of address and new address within 10 days on Form AR-11."

Sincerely,

Paul E. Novak Jr.

Paul E. Novak Jr.
Center Director

# Exhibit J



*Office of the*
*Citizenship and Immigration Services Ombudsman*

**U.S. Department of Homeland Security**
Mail Stop 1225
Washington, D.C. 20528-1225

# Homeland Security

June 1, 2007

Mr. Jayasekhar Kovuri
3414 Blacksmith St SE
Olympia, WA 98501-6203

Dear Mr. Kovuri:

Thank you for your recent inquiry regarding your immigration issue.

Upon receipt of your information, the office of the Citizenship and Immigration Services Ombudsman (CIS Ombudsman) initiated a formal inquiry with the U.S. Citizenship and Immigration Services (USCIS). USCIS should issue a response to you within forty-five (45) days. If you do not receive a response within this period, please notify our office.

Please be aware that although the office of the CIS Ombudsman collaborates with USCIS, it is an independent entity within the Department of Homeland Security (DHS). The office of the CIS Ombudsman is charged with assisting individuals who experience difficulties with the USCIS benefits process. Additionally, the office of the CIS Ombudsman is dedicated to identifying systemic problems in the immigration benefits process, and to recommending solutions to USCIS. Therefore, the concerns you raised in your letter will be considered as our office develops recommendations to improve USCIS' administrative practices.

Once again, thank you for contacting the office of the CIS Ombudsman, and for giving us the opportunity to serve you.

Sincerely,

Prakash Khatri
Ombudsman

PIK/bh

Email: cisombudsman@dhs.gov          Web: http://www.dhs.gov/cisombudsman

U.S. Department of Homeland Security
Washington, DC 20529



**U.S. Citizenship
and Immigration
Services**

HQCIS 181/48.2-C

JUN 1 4 2007

Mr. Jayasekhar Kovuri
3414 Blacksmith Street, Southeast
Olympia, WA 98501

Dear Mr. Kovuri:

Thank you for your letter dated May 21, 2007, to the U.S. Citizenship and Immigration Services Ombudsman (CISO). Your letter concerning you and your wife's immigration statuses was assigned case # 680343 and forwarded to the Customer Assistance Office for a response.

We have researched your cases to determine the status of your Form I-485, Application to Register Permanent Residence or Adjust Status. On February 24, 2007, your case was relocated from the Vermont Service Center, to the Texas Service Center for processing. As the principal applicant, your wife's status is derived from your immigration status and her application cannot be adjudicated until your case is completed.

We regret the length of time it has taken to process your applications for adjustment of status. Your case was pre-adjudicated and reviewed on May 14, 2007. However, the processing of your case has been delayed. A check of our records establishes that your case is not yet ready for decision, as the required investigation into your background remains open.

Until the background investigation is completed, we cannot move forward on your case. These background checks are required to be completed on all applicants who apply for the immigration benefit you are seeking. We will make every effort to make a decision on this case as soon as the background checks are complete.

We have enclosed for your information, two "Fact Sheets" one with the title "Immigration Security Checks – How and Why the Process Works" and the second "USCIS Update – USCIS Clarifies Criteria to Expedite FBI Name Check". These Fact Sheets explains how and why the security checks are necessary.

Mr. Jayasekhar Kovuri
Page 2

# Exhibit K

**BRIAN BAIRD**
THIRD DISTRICT, WASHINGTON

COMMITTEE ON THE BUDGET

COMMITTEE ON SCIENCE

COMMITTEE ON TRANSPORTATION
AND INFRASTRUCTURE

http://www.house.gov/baird



**Congress of the United States**
**House of Representatives**
**Washington, DC 20515**

DISTRICT OFFICES:

GENERAL O.O. HOWARD HOUSE
750 ANDERSON STREET, SUITE 5
VANCOUVER, WA 98661
(360) 695-6292

120 UNION AVENUE SE, SUITE 105
OLYMPIA, WA 98501
(360) 352-9768

WASHINGTON, DC OFFICE:
1421 LONGWORTH HOUSE OFFICE BUILDING
WASHINGTON, DC 20515
(202) 225-3536

September 26, 2005

Mr. and Mrs. Kovuri
2793 Windsor Ln. S.W., Apt. # 1934
Tumwater, WA 98512

Dear Mr. and Mrs. Kovuri:

I want to thank you for contacting me regarding the status of your I-485 applications.  I appreciated hearing from you.

I have initiated an inquiry with the Citizenship and Immigration Service regarding your concerns.  I will notify you again when I receive additional information.  In the meantime, you may contact Joel Staloch in my Olympia office if you have any additional questions or concerns.

Sincerely,

Brian Baird
Member of Congress

BB: js

printed on recycled paper

# Exhibit L

PATTY MURRAY
WASHINGTON

COMMITTEES:
APPROPRIATIONS
BUDGET
HEALTH, EDUCATION, LABOR
AND PENSIONS
VETERANS' AFFAIRS

## United States Senate
WASHINGTON, DC 20510–4704

May 2, 2005

Jayasekhar and Swathi Kovuri
2793 Windsor Ln. SW, Apt. 1934
Tumwater, Washington 98512

Dear Jayasekhar and Swathi:

I appreciate your contacting my Vancouver District office concerning the difficulties you are both experiencing with the U.S. Citizenship and Immigration Services (USCIS) regarding the status of your I-485 petitions. I am happy to look into these matters for you.

My office has contacted a congressional liaison within USCIS and we have inquiries pending on your behalf. We will contact you again as soon as we have any information to report.

In the meantime, if you have any additional questions or concerns, do not hesitate to contact Colleen Catching in my Vancouver District office at 360-696-7797.

Sincerely,

Patty Murray
United States Senator

PM\csc

2930 Wetmore Avenue
Suite 903
Everett, WA 98201-4107
(425) 259-6515

2988 Jackson Federal Building
915 2nd Avenue
Seattle, WA 98174-1003
(206) 553-5545

601 West Main Avenue
Suite 1113
Spokane, WA 99201-0613
(509) 624-9515

The Marshall House
1323 Officer's Row
Vancouver, WA 98661-3856
(360) 696-7797

402 East Yakima Avenue
Suite 390
Yakima, WA 98901-2760
(509) 453-7462

PRINTED ON RECYCLED PAPER
e-mail: http://murray.senate.gov/e-mail
Internet: http://murray.senate.gov

# Exhibit M
# Proposed Order

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JAYASEKHAR KOVURI,                      )
                                         )
              Plaintiff,                 )
                                         )
        v.                               )      Civil Action No. _____
                                         )
CONDOLEEZZA RICE, SECRETARY              )
OF STATE, et al.,                        )
                                         )
              Defendants.                )
                                         )
                                         )

## WRIT OF MANDAMUS

Upon consideration of Plaintiff's Complaint for Writ of Mandamus, and the opposition filed thereto, and the Court having considered the arguments of counsel and the entire record herein, it is hereby,

**ORDERED** that Plaintiff's Complaint for Writ of Mandamus is hereby

_____.

Defendant Federal Bureau of Investigation is hereby **ORDERED** to complete Plaintiff's NNCP check within thirty (30) days of the date of this Order.

Dated this _____ day of _____, 2007.

_____
United States District Judge

JS-44
(Rev.1/05 DC)

**CIVIL COVER SHEET**

07cv 2268
RJL

**I (a) PLAINTIFFS**

JAYASEKHAR KOVURI

**DEFENDANTS**

C. RICE, U.S. Sec. of State, M. MUKASEY, A.G. of the U.S., R. MUELLER, III, FBI Director, E. GONZALEZ, USCIS Director, P. NOVAK, Director Vermont Service Center, USCIS, E. UPCHURCH, Director Texas Service Center, USCIS

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF**  Thurston County
**(EXCEPT IN U.S. PLAINTIFF CASES)**  88888

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  District Of Columbia
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Murthy Law Firm
Aron A. Finkelstein
10451 Mill Run Circle, Suite 100
Owings Mills, MD 21117

Case: 1:07-cv-02268
Assigned To : Leon, Richard J.
Assign. Date : 12/19/2007
Description: TRO/PI

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
◉ 2 U.S. Government Defendant
○ 3 Federal Question (U.S. Government Not a Party)
○ 4 Diversity (Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

**IV.  CASE ASSIGNMENT AND NATURE OF SUIT**
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A.** *Antitrust*

☐ 410 Antitrust

○ **B.** *Personal Injury/ Malpractice*

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

◉ **C.** *Administrative Agency Review*

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☒ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D.** *Temporary Restraining Order/Preliminary Injunction*

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ **E.** *General Civil (Other)*        **OR**        ○ **F.** *Pro Se General Civil*

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/PRIVACY ACT* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

⦿ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Mandamus Action under 28 U.S.C. Sec. 1361 and Preliminary Injunction challenging unreasonable FBI delay in a NNCP background check for an alien.

**VII. REQUESTED IN COMPLAINT**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ [_____]   JURY DEMAND: YES ☐  NO ☑  Check YES only if demanded in complaint

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  YES ☐  NO ☒  If yes, please complete related case form.

DATE 12/18/07   SIGNATURE OF ATTORNEY OF RECORD

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.